UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLEN PLOURDE,<br><br>                Plaintiff<br><br>v.<br><br>MAINE STATE POLICE TROOPER<br>ROBERT CEJKA and MAINE STATE<br>POLICE TROOPER ERIC VERHILLE,<br><br>                Defendants. | Civil Action No. 1:19-cv-00486-JAW |

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants in the above-captioned action, Robert Cejka and Eric Verhille, by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby move this Court to dismiss Plaintiff's Complaint on the following grounds:

## I.    INTRODUCTION

This action arises out of a November 30, 2013 traffic stop. Plaintiff's Amended Complaint ("Plaintiff's Complaint"), ¶9 [Doc. No. 71]. Plaintiff alleges that a lawful traffic stop was transformed into an unconstitutional search and seizure as the result of a canine sniff and subsequent search after the canine alerted – the combination of which lasted less than three (3) minutes. Id. at ¶46. At issue is whether Defendants can be personally liable for the alleged delay imposed by the canine sniff incident to a lawful traffic stop. Id. at ¶12 ("[T]he exact speed at which Plaintiff was alleged to be travelling was stated although the Plaintiff has forgotten it."). The canine sniff and resulting search did not violate clearly established law. Accordingly, this action must be dismissed based on Defendants' qualified immunity.

1

## II. BACKGROUND

Plaintiff's Complaint, filed on May 18, 2021, concerns a November 30, 2013 traffic stop on Interstate 295 near Gardiner, Maine. Id. at ¶9. Plaintiff was stopped by Maine State Trooper Robert Cejka for speeding. Id. at ¶¶11 – 12. During the course of that traffic stop, Maine State Trooper Eric Verhille responded with his K-9. Id. at ¶21 ("Plaintiff recalls Trooper Verhille's response time to be very fast."). Following a canine alert during the exterior sniff of Plaintiff's vehicle, Tpr. Verhille conducted a brief search of Plaintiff's vehicle. Id. at ¶46 (". . . Plaintiff estimates the search of his vehicle took approximately two and a half minutes] That search did not reveal the presence of any illegal substance(s). Id. Tpr. Verhille then cleared the scene with Tpr. Cejka issuing a verbal warning and allowing Plaintiff to proceed. The entire 2013 interaction appears to have lasted less than ten (10) minutes, id. at ¶¶21, 46, of which less than three (3) minutes was spent conducting the canine sniff and vehicle search subsequent to the canine alert. Id.[1]

Relying on *Rodriguez v. U.S.*, 575 U.S. 348 (2015) and subsequent decisions, Plaintiff asserts three (3) claims against Defendants Robert Cejka and Eric Verhille: (i) deprivation of Plaintiff's rights under the Fourth Amendment to the United States Constitution actionable under 42 U.S.C.A. § 1983; (ii) deprivation of Plaintiff's rights under the Fourth Amendment to the United States Constitution, actionable under the Maine Civil Rights Act, 5 M.R.S.A. § 4682; and (iii) deprivation of Plaintiff's rights under Article 1, Section 5 of the Maine Constitution, actionable under the Maine Civil Rights Act, 5 M.R.S.A. § 4682. Plaintiff's Complaint, ¶¶ 76 -

---

[1] Plaintiff expressly incorporates a one-minute twenty-seven second (1:27) video of the November 30, 2013 interaction, designated Exhibit A [Doc. No. 69], into Plaintiff's Complaint.

87. Plaintiff's Complaint seeks unspecified damages, as well as punitive damages, as relief. Id. at ¶¶ 78-79; 82-83; 86 – 87.

### III.     STANDARD OF REVIEW

A court evaluating a motion to dismiss, "draw[s] facts from [plaintiff]'s complaint and documents incorporated into the complaint." *Morales v. Chadburne*, 793 F.3d 208, 212 (citing *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 94 (1st Cir. 2013)). When reviewing a motion to dismiss, the court "assume[s] that all the facts as alleged in the complaint are true." *Gebresalassie v. D.C.*, 170 F. Supp. 3d 52, 56 (D.D.C. 2016). "The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Id.* (quoting *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C.Cir 2014)); *see also Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("A district court's central task in evaluating a motion to dismiss is to determine whether the complaint alleges facts sufficient to state a cause of action. In conducting that tamisage, the court need not accept a complaint's 'bald assertions' or 'unsupportable conclusions.'" (quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987))). "To survive a motion to dismiss, 'a complaint must establish a plausible entitlement to relief.'" *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 68 (1st Cir.2010). "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Spencer v. D.C.*, 168 F. Supp. 3d 114, 118 (D.D.C. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009))).

## IV. ARGUMENT AND MEMORANDUM OF LAW

### A. PLAINTIFF'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

#### 1. Plaintiff's Claims

Plaintiff's Amended Complaint asserts a cause of action under 42 U.S.C.A. § 1983 alleging that Defendants violated Plaintiff's rights under the Fourth Amendment of the United States Constitution. Plaintiff's Complaint, ¶¶ 76 - 87. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983. Plaintiff's Complaint also asserts (2) counts pursuant to 5 M.R.S.A. § 4682[2], alleging that Defendants' actions on November 30, 2013 deprived him of his rights under the Fourth Amendment to the United States Constitution and under Article 1, section 5 of the Maine Constitution. *State v. Martin*, 2015 ME 91, 120 A.3d 113, 118 ("Article I, section 5 of the Maine Constitution provides protections that are coextensive with the Fourth Amendment." (citing *Clifford v. MaineGeneral Med. Ctr.*, 2014 ME 60, ¶ 67 n. 21, 91 A.3d 567)). "Longstanding precedent establishes that '[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.'" *Morales*, 793 F.3d at 215 (quoting *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

---

[2] "Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief." 5 M.R.S.A. § 4682.

Plaintiff's Complaint identifies the "person[s]" pursuant to Section 1983 and 4682 as Tpr. Robert Cejka and Tpr. Eric Verhille, asserting claims for monetary damages against Defendants in their personal capacities. *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir.2002) ("The State of Maine and its agencies are not 'persons' within the meaning of section 1983 and, therefore, cannot be sued under section 1983." (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989))); *see also Andrews v. Dep't of Env't Prot.*, 1998 ME 198, ¶ 11, 716 A.2d 212, 217 ("State officials sued in their personal capacities are 'persons' pursuant to section 1983." (citing *Hafer v. Melo*, 502 U.S. 21, 23, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991))); *see also* Plaintiff's Complaint at ¶64 ("Plaintiff sues these Defendants in their individual capacity[ies]."). State officials sued for monetary damages may assert the defense of qualified immunity. *Crawford v. Blue*, 271 F. Supp. 3d 316, 329–30 (D. Mass. 2017) ("[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law [i.e., qualified immunity]." (quoting *Hafer*, 502 U.S. at 25 (1991))).

**2. Qualified Immunity Standard**

"[C]ourts should evaluate claims of qualified immunity at the earliest practicable stage of litigation." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "The [U.S. Supreme] Court has stressed the importance of resolving issues of immunity at the start of the litigation, lest unwarranted lawsuits impede the proper functioning of government." *Garnier v. Rodriguez*, 506 F.3d 22, 26 (1st Cir. 2007) (citing *Hunter*, 502 U.S. at 227); *see also Haley v. City of Bos.*, 657 F.3d 39, 47 (1st Cir. 2011) (addressing qualified immunity defense on motion to dismiss) (citing *Siegert v. Gilley*, 500 U.S.

5

226, 232–33 (1991)).  Qualified immunity is an affirmative defense.  *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) (citing *Gomez v. Toledo*, 446 U.S. 635, 639–641 (1980)).

The doctrine of qualified immunity, "gives government officials breathing room to make reasonable but mistaken judgments." *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  Courts in this Circuit apply a two-part test to determine whether a defendant is entitled to qualified immunity.  *MacDonald*, 745 F.3d at 12 (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.2009)).  "The first element 'focuses on the clarity of the law at the time of the alleged civil rights violation'; this element turns on whether the contours of the relevant right were clear enough to signal to a reasonable official that his conduct would infringe that right." *MacDonald*, 745 F.3d at 12.  "The second element is more particularized; it turns on 'whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'"  *Id.*; *see also Morales*, 793 F.3d at 214 ("To determine whether a defendant is entitled to qualified immunity, we generally proceed through a two-part analysis, considering whether '(1) the facts alleged show the defendant[']s conduct violated a constitutional right, and (2) the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful.'" (quoting *Santana v. Calderón*, 342 F.3d 18, 23 (1st Cir.2003))).

The "clearly established" standard, "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably ... anticipate when their conduct may give rise to liability for damages." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal quotations omitted). With respect to identifying "clearly established" law in the context of the Fourth Amendment, the U.S. Supreme Court observed:

> We have repeatedly told courts ... not to define clearly established law at a high level of generality.  The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.'  Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citations and quotations omitted) (emphasis in original).  The qualified immunity analysis, "recognizes that 'law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is . . . lawful'; 'in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.'" *Est. of Bennett v. Wainwright*, 548 F.3d 155, 168 (1st Cir. 2008) (quoting *Buchanan v. Maine*, 469 F.3d 158, 169 (1st Cir. 2006)).

The "law," for the purpose of determining whether the alleged conduct violated "clearly established law" is the law as reasonably understood at the time of the alleged conduct.  *See Hunt*, 773 F.3d at 368 (defining controlling question in analyzing claim of excessive force to be, "whether, *in 2011*, [plaintiff] had a clearly established right to be handcuffed with his hands in front of him when it would not be obvious to a reasonable officer that [plaintiff's] abdominal scar would prevent him from putting his hands behind his back.") (emphasis added).  For a right to be "clearly established," "existing precedent must have placed the . . . constitutional right beyond debate." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *al–Kidd*, 563 U.S. at 741); *see also MacDonald*, 745 F.3d at 14 (court "must examine whether, at the time of the incident, there were either controlling cases or a consensus of persuasive authorities such that reasonable police officers could not have thought that their actions were lawful.").  "A government official's conduct violates clearly established law when, 'at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would ... underst[and]

7

that what he is doing violates that right.'" *Morales* 793 F.3d at 214 (quoting *al-Kidd*, 563 U.S. at 741).

"Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law." *St. Hilaire v. City of Laconia*, 71 F.3d 20, 27 (1st Cir. 1995) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). In conducting its analysis of the two-part qualified immunity test, a reviewing court has discretion "not to engage in the first inquiry, but to go directly to the second." *Hunt*, 773 F.3d at 367 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Davila v. Northern Regional Joint Police Board*, 370 F.Supp.3d 498, 512 (2019) ("A court may decide these issues in any order. That is, if the officer demonstrates that the right at issue was not 'clearly established' at the time of the alleged violation, a court need not consider whether a violation of a constitutional right occurred." (citing *Pearson*, 555 U.S. at 231) (internal citation omitted).

### 3. The conduct alleged in Plaintiff's Complaint does not violate clearly established law as of November 30, 2013.

In 2005, the Supreme Court answered the certified question, "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) Answering that question, the Court held, "In our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy. Our cases hold that it did not." *Id. at* 408. The operative question, as of 2013 was, therefore, whether the traffic stop was conducted reasonably. *Id.* The practical state

Fourth Amendment law as of November 30, 2013 was, "when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." *United States v. Alexander*, 448 F.3d 1014, 1016–17 (8th Cir. 2006); *see also, id.* at 1017 ("[E]ven if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two minute delay to conduct a canine sniff is a de minimis intrusion on the driver's personal liberty that does not violate the Fourth Amendment."); *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 649 (8th Cir. 1999) ("[T]he canine sniff was thirty seconds or two minutes over our line, and it was done without reasonable suspicion to believe there were drugs in this particular vehicle. Does this mean [appellant] was unconstitutionally detained?  We think not."); *United States v. McKoy*, 2007 WL 891356, at *5 (D.D.C. Mar. 22, 2007) ("A review of the case law reveals that there is no bright line demarcation for determining when a traffic stop has been impermissibly extended by a canine sniff.").

Two years *after* the traffic stop at issue, the Supreme Court held that, with respect to whether a canine sniff incident to a traffic stop for a motor vehicle infraction violated a driver's rights pursuant to the Fourth Amendment, "The critical question [] is not whether the dog sniff occurs before or after the officer issues a ticket [] but whether conducting the sniff 'prolongs' – i.e. adds time to – 'the stop.'"  *Rodriguez*, 575 U.S. at 357 (citing *Caballes*, 543 U.S. at 407). The *Rodriguez* court specifically noted, "[w]e granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff."  *Id.* at 354 (citing *U.S. v.*

9

*Morgan*, 270 F.3d 625, 632 (8th Cir. 2001); *State v. Baker*, 2010 UT 18, ¶13, 229 P.3d 650, 658 (2010)).³

Plaintiff's Complaint alleges that a 2013 canine sniff and search of approximately three (3) minutes violated his rights under the Fourth Amendment. Plaintiff's Amended Complaint at ¶¶46 (". . . Plaintiff began filming the search soon after it began . . . .").⁴ That search occurred prior to the issuance of a warning for Plaintiff's traffic infraction. Id. (including statement from Defendant Cejka, "I'll give you a warning for the speed[ing] and get you on your way."). The allegations of Plaintiff's Complaint do not support a conclusion that Defendants violated Plaintiff's "clearly established" constitutional rights or that all reasonable officers in Defendants' position on November 30, 2013 would have understood that their conduct violated Plaintiff's rights.

> **a. Initiation of an exterior dog sniff incident to a lawful traffic stop in 2013 did not require "reasonable suspicion" that Plaintiff possessed illegal narcotics under "clearly established" law.**

Plaintiff's Complaint also alleges that the absence of any "reasonable suspicion ordinarily demanded to justify detaining an individual," rendered the November 30, 2013 traffic stop an unconstitutional infringement of Plaintiff's Fourth Amendment rights. Plaintiff's Complaint at

---

³ The fact that disagreement persists among federal courts regarding whether the post-incident decision in *Rodriguez* altered the law established by *Caballes* supports the conclusion that the law was far from clear at the time of the November 30, 2013 stop at issue. *Cf. Davila v. N. Reg'l Joint Police Bd.*, 2016 WL 1252986, at *4 (W.D. Pa. Mar. 31, 2016) ("The Supreme Court's opinion in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), does not change the analysis in terms of what legal rule was clearly established as of the date of the incident in 2011. While that case sheds more light on the law surrounding traffic stops, see *Rodriguez*, 135 S. Ct. at 1616 (holding that dog sniff that prolongs a traffic stop beyond that reasonably required to accomplish the stop's mission, if that sniff was not supported by independent reasonable suspicion, violates the Fourth Amendment); it did not announce a new rule that changed the clearly established nature of the rights articulated above . . . .") and *Mordi v. Zeigler*, No. 3:11-CV-00193-NJR, 2020 WL 2425796, at *11 (S.D. Ill. May 12, 2020) (observing, in evaluating "clearly established law," that "[Plaintiff], for example, can only rely on *Caballes* for the general proposition that a lawful stop can become unlawful if prolonged beyond the time needed to complete the stop. However, the particular facts and assumptions made by the Court in that case show that it did not clearly establish such a right.").

⁴ Documents "attached to the complaint, or [] expressly incorporated therein" as well as documents "sufficiently referred to in the complaint," provide an exception to limiting record on Fed. R. 12(b)(6) motion to allegations in Complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (collecting cases).

10

¶55.  However, the clearly established law as of November 30, 2013 did not require that a dog sniff incident to a lawful traffic stop be supported by "reasonable suspicion."  *U.S. v. Rodriguez-Morales*, 929 F.2d 780, 788 (1991).  "So long as the automobile is lawfully impounded, the canine sniff test can be performed without any showing of reasonable suspicion."  *Id.*; *see also Caballes*, 543 U.S. at 409 (holding that dog sniff "performed on the exterior of respondent's car while he was lawfully seized for a traffic violation, was not a "search" implicating "legitimate privacy interests.").  As of 2013, the law, as established by the U.S. Supreme Court, was that a dog sniff on the exterior of a vehicle was not a search subject to Fourth Amendment protections.  *Muehler v. Mena*, 544 U.S. 93, 101 (2005) ("Because we held that a dog sniff was not a search subject to the Fourth Amendment, we rejected the notion that "the shift in purpose" "from a lawful traffic stop into a drug investigation" was unlawful because it "was not supported by any reasonable suspicion." (citing *Caballes*, at 408)); *see also United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993) ("A dog 'sniff' is not a search." (citing *Hernandez*, 976 F.2d 929); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1013 (5th Cir.1990); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983))).  "We hold that the canine sniff of the exterior of a vehicle which is legitimately within the custody of the police is not a search within the meaning of the fourth amendment; and that subjecting the exterior of such a motor vehicle to the olfactory genius of a drug detection dog does not infringe upon the vehicle owner's fourth amendment rights."  *Rodriguez-Morales*, 929 F.2d at 788.

The existence or nonexistence of "reasonable suspicion" is irrelevant to whether or not Defendants' detention of Plaintiff violated Plaintiff's Fourth Amendment rights.  Accordingly, to the extent Plaintiff's claims are premised on the absence of reasonable suspicion supporting the dog sniff, those claims must be dismissed.

### b. In the context of reasonableness, the duration of the 2013 dog sniff did not violate "clearly established" law.

Plaintiff's Amended Complaint alleges that the additional time during which he was delayed, incident to the canine sniff, rendered the otherwise lawful traffic stop an unreasonable seizure, violating his Fourth Amendment rights. Id. ("Plaintiff was given a verbal warning for speeding [], an act that should have taken 10 seconds or so and did not justify the time it took for Trooper Verhille and the K-9 unit to arrive ('prolonging the stop') or the subsequent search of the Plaintiff's vehicle that included Trooper Cejka.") (internal citations omitted).

In its 2005 *Muehler* decision, the Supreme Court described the then-current state of the law:

> Our recent opinion in *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), is instructive. There, we held that a dog sniff performed during a traffic stop does not violate the Fourth Amendment. We noted that a lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," but accepted the state court's determination that the duration of the stop was not extended by the dog sniff. *Id.*, at 407, 125 S.Ct., at 836–838.

544 U.S. at 101. "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)*; see also Rodriguez*, 576 U.S. at 355 ("The seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" (quoting *Johnson*, 555 U.S. at 333)) (brackets in original).

There is no judicially established length of time to complete a traffic stop. Whether an official's actions were "reasonable" in relation to the rights at issue must be evaluated in light of the specific situation at issue. *Mullenix*, 577 U.S. at 12 ("[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine [] will apply to the factual situation the officer

confronts"); *see also United States v. Giuffrida*, No. 1:11-CR-00095-JAW-1, 2012 WL 177955, at *8 (D. Me. Jan. 19, 2012), aff'd, No. 1:11-CR-00095-JAW-01, 2012 WL 406959 (D. Me. Feb. 8, 2012) ("Assuming, for the sake of argument alone, that the detention of Defendants was extended by a few minutes to give [the K-9] Officer [] time to run [his canine] around the vehicle, such a limited extension in the duration and scope of the investigation would have been reasonable under the circumstances."); *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course a de minimis level of imposition with which the Constitution is not concerned."). While instructive instead of determinative, courts have consistently held that a routine traffic stop can last up to twenty or thirty minutes – two to three times the length of time of the stop at issue in Plaintiff's Complaint – without infringing on a driver's constitutional rights. *See, e.g., Com. v. Feyenord*, 445 Mass. 72, 74, 833 N.E.2d 590, 594–95 (2005) (traffic stop not unreasonably prolonged where detention included involvement of "a canine officer [] who arrived at the scene within fifteen to twenty minutes with a drug-sniffing dog" after driver had been detained for "five to ten minutes"); *Davila v. N. Reg'l Joint Police Bd.*, 370 F. Supp. 3d at 516 (traffic stop lasting "twenty-nine minutes" arising out of traffic infraction was reasonable absent reasonable suspicion supporting additional detention). It is also instructive that, where the time between the stop and the *arrival* of a drug detection dog "took about fifteen to twenty minutes," the total duration of the stop was nevertheless not "unreasonably prolonged." *U.S. v. Mott-Frye*, 251 F.Supp.3d 310, 313, 315 (D.Mass. 2017) ("This traffic stop was not unduly delayed to await the arrival of the canine unit."). Once a trained canine alerts, as Trooper Verhille's canine did here, Plaintiff's Complaint at ¶29, sufficient reasonable suspicion is created to justify a further search of the vehicle and the constitutional stopwatch relative to whether the duration of the initial exterior sniff "unreasonably prolonged" the traffic stop ceases. *See, e.g.,*

13

*Mott-Frye*, 251 F.Supp.3d at 315 (canine alert sufficient to create probable cause to search vehicle).

To successfully rebut the qualified immunity defense of Tpr. Robert Cejka and Tpr. Eric Verhille, Plaintiff must allege that their actions on November 30, 2013 violated the "clearly established" law then in effect. *Al-Kidd*, 563 U.S. at 741("To render a government official's claim of qualified immunity inert, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"). To the extent there was controlling law on the issue as of November 30, 2013, that law reasonably supported a conclusion that an dog sniff of the exterior of a vehicle incident to a lawful traffic stop had to be "reasonable" – not significantly deviating in time and scope from the initial purpose of the traffic stop. Plaintiff's Complaint, including Exhibit A, fails to support that necessary element of Plaintiff's causes of action pursuant to 42 U.S.C.A. § 1983 or 5 M.R.S.A. § 4682. Defendants' actions as alleged in Plaintiff's Amended Complaint, do not violate "clearly established" law. Defendants are, accordingly, immune from suit with respect to Plaintiff's allegations that Defendants violated his rights under the Fourth Amendment of the United States Constitution.

### V. CONCLUSION

Plaintiff's Complaint arises out of a 2013 traffic stop for exceeding the speed limit. During that stop, a nearby canine unit conducted an exterior search of the vehicle and, when the canine alerted, Defendant Eric Verhille conducted an interior search of the vehicle. The interaction took minutes.

The operative question is whether the exterior search prior to the canine alerting – which prompted an interior search of Plaintiff's vehicle – either exceeded the time necessary to conduct the normal tasks attendant to a traffic stop or "unreasonably prolonged" a traffic stop. The

answer is clearly that it did not.  If Plaintiff's allegations rise to the level of a constitutional violation, then the allegations nevertheless fail to support the conclusion that "no evidence supporting the conclusion that "every reasonable official would ... underst[and] that what he is doing violates that right.'"  *Morales*, 793 F.3d at 214.  Defendants are, therefore, entitled to qualified immunity with respect to Plaintiff's claims and Plaintiff's Complaint must be dismissed.

WHEREFORE, Defendants request that this court dismiss Plaintiff's Complaint, enter judgment in the Defendants' favor, award Defendants their costs, and grant all such other and further relief as this Court deems just.

DATED:  July 23, 2021                                          Respectfully submitted,

                                                                                    AARON M. FREY
                                                                                    Attorney General


                                                                                    /s/ Sean D. Magenis
                                                                                    SEAN D. MAGENIS
                                                                                    Assistant Attorney General
                                                                                    Office of the Attorney General
                                                                                    6 State House Station
                                                                                    Augusta, ME  04333-0006
                                                                                    (207) 626-8830
                                                                                    sean.d.magenis@maine.gov
                                                                                    *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July, 2021, I electronically filed the above document with the Clerk of Court using the CM/ECF system and caused a copy of said document to be mailed by First Class Mail, postage prepaid to:

Glen Plourde
455 Chapman Road
Newburgh, ME  0444

/s/ Sean D. Magenis
SEAN D. MAGENIS
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
(207) 626-8830
sean.d.magenis@maine.gov