UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GLEN PLOURDE,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        No. 1:19-cv-00486-JAW
                                 )
UNKNOWN MAINE STATE              )
POLICE OFFICER #1, et al.,       )
                                 )
        Defendants.              )

## ORDER ON PENDING MOTIONS

Defendant state troopers file a motion to dismiss a plaintiff's Fourth
Amendment violation claim following a traffic stop and subsequent K-9 sniff and
oppose the plaintiff's latest motion for leave to amend his complaint. The Court
grants the plaintiff's motion for leave to amend because the added claim relates back
to the original complaint and is not futile. Considering the complaint as amended,
the Court denies the defendants' motion to dismiss.

## I.   PROCEDURAL HISTORY

On October 23, 2019, Glen Plourde filed a pro se complaint against the state of
Maine and two unknown Maine State Troopers in connection with a November 30,
2013, traffic stop. *Compl.* (ECF No. 1) (*Compl.*). He asserted claims under 42 U.S.C.
§ 1983, alleging various constitutional violations and a conspiracy between agents of
the state of Maine, as well as claims under Article 1, Section 5 of the Maine
Constitution. *Id.* ¶¶ 41-102. On November 8, 2019, Mr. Plourde filed an amended

complaint, in which he greatly expanded the scope of the conspiracy. *Am. Compl.* (ECF No. 8) (*First Am. Compl.*).

On December 12, 2019, following a 28 U.S.C. § 1915(e)(2) review of Mr. Plourde's First Amended Complaint, the Magistrate Judge issued a recommended decision, recommending that this Court dismiss Mr. Plourde's First Amended Complaint. *Recommended Decision After Review of Pl.'s Compl.* at 4 (ECF No. 11) (*Recommended Decision*). On January 2, 2020, Mr. Plourde objected and filed a motion for leave to file an amended complaint. *Obj. and Mem. to Recommended Decision* (ECF No. 14); *Mot. for Leave to Amend Compl. Pursuant to Federal Rule of Civil Procedure 15(a)(2)* (ECF No. 15).

On January 6, 2020, the Magistrate Judge granted Mr. Plourde's motion for leave to amend. *Order Granting Mot. for Leave to File Am. Compl.* (ECF No. 16). On January 24, 2020, Mr. Plourde filed a second amended complaint. *Am. Compl.* ¶¶ 2-3, 74-85 (ECF No. 18) (*Second Am. Compl.*). On June 15, 2020, Mr. Plourde submitted a USB flash drive containing a video of his encounter with law enforcement and moved for leave to further amend his complaint. *Mot. for Leave to Amend Compl. Pursuant to Federal Rule of Civil Procedure 15(a)(2)* (ECF No. 24).

On July 13, 2020, following a § 1915(e)(2) review of Mr. Plourde's Second Amended Complaint, the Magistrate Judge issued a recommended decision, recommending that the Court dismiss the Second Amended Complaint for the same reasons stated in the Magistrate Judge's first recommended decision. *Suppl. Recommended Decision After Review of Pl.'s Second Am. Compl. and Order on Mot.*

for Leave to File a Third Am. Compl. (ECF No. 25) (*Suppl. Recommended Decision*). The Magistrate Judge also denied the motion for leave to amend, concluding that leave to amend would be futile. *Id.* at 6; *Order* (ECF No. 26). On July 29, 2020, Mr. Plourde objected and filed another motion for leave to file an amended complaint. *Obj. and Mem. to Recommended Decision* (ECF No. 28); *Mot. for Leave to Amend Compl. Pursuant to Federal Rule of Civil Procedure 15(a)(2)* (ECF No. 29).

On December 3, 2020, the Magistrate Judge granted Mr. Plourde's motion for leave to amend. *Order on Mot. for Leave to Amend Compl.* (ECF No. 31). The Magistrate Judge concluded that Mr. Plourde's "claim under 42 U.S.C. § 1983 for an alleged violation of the Fourth Amendment based upon the purpose and length of the stop of [Mr. Plourde's] vehicle would withstand a preliminary review under § 1915," but that to the extent he attempted to assert other claims, his proposed amendment would be futile. *Id.* at 3.

On February 1, 2021, Mr. Plourde moved for leave to amend his complaint and filed a proposed third amended complaint. *Mot. for Leave to Amend Compl. Pursuant to 12/03/20 Order (ECF No. 31)* (ECF No. 44); *Am. Compl.* (ECF No. 45) (*Third Am. Compl.*). On February 2, 2021, the Court granted Mr. Plourde's motion for leave to amend, dismissing the Magistrate Judge's Recommended Decision and Supplemental Recommended Decision as moot. *Order* (ECF No. 47). On March 15, 2021, the Court performed a § 1915(e)(2) review of Mr. Plourde's Third Amended Complaint, concluding that he had stated multiple claims upon which he could proceed. *Order* (ECF No. 48). The Court also authorized Mr. Plourde to engage in limited discovery

to ascertain the names of the Maine State Troopers depicted in his cellphone recording of the traffic stop.  *Id.*  On May 10, 2021, the Office of the Attorney General identified the two troopers involved in the November 30, 2013, traffic stop as Robert Cejka and Eric Verhille.  *Order* (ECF No. 67).

Pursuant to this new information, Mr. Plourde requested leave to file a fourth amended complaint on May 17, 2021, *Mot. for Leave to Amend Compl. Pursuant to 03/15/21 Order (ECF No. 48)* (ECF No. 68), which the Court granted on May 18, 2021.  *Order* (ECF No. 70); *Am Compl.* (ECF No. 71) (*Fourth Am. Compl.*).  The Fourth Amended Complaint is now the operative complaint.

On July 23, 2021, Troopers Cejka and Verhille (Defendants) filed a motion to dismiss Mr. Plourde's Fourth Amended Complaint.  *Defs.' Mot. to Dismiss Pl.'s Compl.* (ECF No. 76) (*Defs.' First Mot. to Dismiss*).  On August 16, 2021, Mr. Plourde filed his opposition to Defendants' first motion to dismiss.  *Pl.'s Opp'n to Defs.' Mot. to Dismiss* (ECF No. 79) (*Pl.'s First Opp'n*).  That same day, Mr. Plourde filed a fifth amended complaint without seeking leave of the Court to do so.  *Am. Compl. Pursuant to Fed. R. Civ. P. 15(a)(B)* (ECF No. 80) (*Fifth Am. Compl.*).

On August 31, 2021, Defendants filed a second motion to dismiss in response to Mr. Plourde's new amended complaint.  *Defs.' Mot. to Dismiss Pl.'s Fifth Am. Compl.* (ECF No. 81) (*Defs.' Second Mot. to Dismiss*).  On September 24, 2021, Mr. Plourde filed his opposition in response to the Defendants' second motion to dismiss, *Pl.'s Opp'n to Defs.' 08/31/21 Mot. to Dismiss* (ECF No. 83) (*Pl.'s Second Opp'n*) and

requested leave to further amend his complaint. *Mot. to Amend Pleading Pursuant to Fed. R. Civ. P. 15(a)(2)* (ECF No. 84) (*Pl.'s Mot. to Am.*).

On October 6, 2021, the Defendants filed a reply in response to Mr. Plourde's opposition to their motion to dismiss. *Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss Pl.'s Fifth Am. Compl.* (ECF No. 85) (*Defs.' Reply*). On October 15, 2021, the Defendants filed a response in opposition to Mr. Plourde's latest motion to amend his complaint. *Defs.' Opp'n to Pl.'s Mot. to Am. Compl.* (ECF No. 86) (*Defs.' Opp'n to Pl.'s Mot. to Am.*)

## II.    FACTS

On November 30, 2013, Mr. Plourde was driving from Maine to Connecticut on I-295 when he was pulled over by Maine State Trooper Robert Cejka approximately ten miles south of the Gardiner, Maine tollbooth. *Fourth Am. Compl.* ¶ 9. Trooper Cejka approached Mr. Plourde's car and informed him that he had been pulled over for speeding, although Mr. Plourde says that he was "maintaining the speed limit and [was] pulled over for no apparent reason." *Id.* ¶¶ 10-12. Trooper Cejka asked Mr. Plourde if he was aware that he had been speeding and twice asked whether he had any marijuana in his vehicle. *Id.* ¶¶ 12-15. Mr. Plourde responded "no" to all three questions. *Id.*

Trooper Cejka informed Mr. Plourde that a K-9 unit would be arriving to inspect his vehicle for marijuana; a short time later, Maine State Trooper Eric Verhille arrived with his K-9 unit, Clint. *Id.* ¶¶ 17, 21-22; *Defs.' Second Mot. to*

*Dismiss* at 2.  Minute 1:43 of the dashcam video submitted by the Defendants[1] shows Trooper Cejka walking over to Mr. Plourde's car.  *Defs.' Second Mot. to Dismiss*, Attach. 3, *Ex. 1-B* (*Dashcam Video*).  At minute 2:37 Trooper Cejka walks back to his vehicle holding documents provided by Mr. Plourde.  *Id.*  At 2:43 a second trooper, presumably Trooper Verhille, walks up to Mr. Plourde's vehicle and is seen talking to Mr. Plourde until minute 3:07.  *Id.*  At minute 3:45 Trooper Verhille leads a dog around the front of Mr. Plourde's vehicle and continues to circle the vehicle; Trooper Cejka remains in his cruiser.  *Id.*  At approximately minute 5:07, Trooper Cejka exits his cruiser and at 5:15 Trooper Verhille is heard saying to Trooper Cejka that Clint "seemed pretty interested in the car from the get-go," *id.*, although Mr. Plourde maintains that the K-9 did not respond in any way to his vehicle, despite circling it several times.  *Fourth Am. Compl.* ¶ 23.

At approximately minute 5:24 Trooper Cejka walks to Mr. Plourde's door to request that he exit his vehicle so they can search it.  *Dashcam Video; Fourth Am. Compl.* ¶¶ 29-31.  At 5:50 Trooper Verhille and Clint begin searching the interior of

---

[1]     "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  However, there is a "narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.'"  *Alt. Energy, Inc.*, 267 F.3d at 33 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)); *see Foley v. Wells Fargo Bank, N A.*, 772 F.3d 63, 74 (1st Cir. 2014) (quoting *Watterson*, 987 F.2d at 3); *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020) (enumerating exceptions recognized by the First Circuit).

Here, Mr. Plourde routinely refers to the dashcam video in his Fourth Amended Complaint, *see, e.g., Fourth Am. Compl.* ¶¶ 21, 46, thus the video meets the final exception set forth in *Alternative Energy, Inc.*  Moreover, neither party has disputed the authenticity of the video.  The Court therefore concludes that the video has been expressly incorporated into Mr. Plourde's Fourth Amended Complaint and all subsequent amendments and the Court may consider it in resolving the pending motion to dismiss.

Mr. Plourde's vehicle.  *Dashcam Video*.  Meanwhile, Trooper Cejka searched Mr. Plourde's person.  *Id.*; *Fourth Am. Compl.* ¶¶ 32-35.

At minute 7:15 of the video one of the officers can be heard saying "moldy," presumably having found the old piece of pizza discovered in Mr. Plourde's vehicle, which Trooper Cejka believed was the reason the K-9 had alerted.  *Fourth Am. Compl.* ¶¶ 42, 45; *Dashcam Video*.  Soon after, Mr. Plourde began recording the incident on his cell phone.  *Fourth Am. Compl.* ¶ 40.  After a brief conversation between Mr. Plourde and Trooper Cejka about the piece of pizza, during which Trooper Verhille continued to search Mr. Plourde's vehicle, Trooper Cejka permitted Mr. Plourde to return to his vehicle and proceed on his way.  *Id.* ¶¶ 43, 45, 53.  Trooper Cejka did not give Mr. Plourde a ticket, written warning, or other evidence of the encounter.  *Id.* ¶ 53.

## III.   THE PARTIES' POSITIONS[2]

### A.   Defendants' Position

Troopers Cejka and Verhille first argue that Mr. Plourde's Fifth Amended Complaint should be dismissed because he alleges new facts in that he now "denies that he was speeding at any time" and thus claims that the "initial seizure by Trooper Cejka of his person and vehicle lacked probable cause," whereas he had previously alleged only that the traffic stop was impermissibly prolonged by the K-9 search.  *Defs.' Second Mot. to Dismiss* at 6.

---

[2]      The Court does not separately describe the parties' positions on the pending motion to amend, as the parties incorporate their arguments on that matter in their briefing on the motion to dismiss. *See Defs.' Opp'n to Pl.'s Mot. to Am.* at 1-2; *Pl.'s Mot. to Am.* at 1-2.

The Defendants submit that Mr. Plourde's "Fifth Amended Complaint is untimely" because the action accrued on November 30, 2013 and the six-year statute of limitations period expired on November 30, 2019, which means Mr. Plourde must show that his new claim relates back to his original complaint. *Id.* at 6-7. The Defendants say that Mr. Plourde's Fifth Amended Complaint does not meet the relation back standard under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure because he now "alleges that he was stopped for no reason [which] is a new allegation" originating from conduct other than that alleged in the original complaint. *Id.* at 8. The Defendants also say "Plaintiff's attempt to add a new and untimely claim is futile" because he is attempting "to enlarge the scope of his complaint to assert claims which, on their face and in the context of the allegations of [his] original Complaint, should be dismissed under the *Denton*[*v. Hernandez*, 504 U.S. 25, 33 (1992)] standard." *Id.* at 9. They also note "the significant divergence between the allegations of Plaintiff's Complaint and the recently located dashcam video of the entire traffic stop at issue" as undermining Mr. Plourde's "effort to maintain this action." *Id.* at 9-10.

As to the substance of Mr. Plourde's claims, the Defendants assert that they are "barred by qualified immunity." *Id.* at 10. Under the qualified immunity standards, the Defendants contend that "[t]he conduct alleged in Plaintiff's Complaint does not violate clearly established law as of November 30, 2013." *Id.* at 14. They say that under *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) "[t]he operative

question, as of 2013 was . . . whether the traffic stop was conducted reasonably." *Id.* at 15.

The Defendants contend that "to the extent Plaintiff's claims are premised on the absence of reasonable suspicion supporting the dog sniff, those claims must be dismissed" because "the clearly established law as of November 30, 2013 did not require that a dog sniff incident to a lawful traffic stop be supported by 'reasonable suspicion.'" *Id.* at 16-17. They say that the law at the time established that "[s]o long as the automobile is lawfully impounded, the canine sniff test can be performed without any showing of reasonable suspicion." *Id.* at 17 (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 788 (1st Cir. 1991)).

Second, the Defendants argue that "[t]he duration of the 2013 dog sniff did not violate 'clearly established' law," which only requires that a dog sniff not "measurably extend the duration of the stop." *Id.* at 18 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). The Defendants contend that "[c]ourts have consistently held that a routine traffic stop can last up to twenty or thirty minutes – two to three times the length of time of the stop at issue in Plaintiff's Complaint – without infringing on a driver's constitutional rights." *Id.* at 19 (collecting cases). The Defendants conclude that "Plaintiff's allegations that his Fourth Amendment rights were violated fail to support the conclusion that 'every reasonable official would . . . underst[and] that what he is doing violates that right.'" *Id.* at 20 (alteration in original) (citing *Morales v. Chadbourne*, 793 F.3d 208, 214 (1st Cir. 2015)).

### B.    Plaintiff's Opposition

As to amending his complaint Mr. Plourde says "[t]he fact that [he] denies he was speeding 'arises out of the same conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading,'" to argue that his claim relates back to the date of his original pleading pursuant to Rule 15(c)(1)(B). *Pl.'s Opp'n* at 8. He submits that his claim "is therefore not time-barred, and [there] is therefore no [] reasonable reason to dismiss [his] Fifth Amended Complaint." *Id.* He says that in each complaint he "beg[an] by describing the fact that he believed he was maintaining the speed limit" and "implicitly pled that he was not speeding." *Id.* at 8-9. He insists he never conceded that he was speeding, as stated by the Defendants in their first motion to dismiss. *Id.* Thus, "[t]he fact that [he] denies and has denied he was speeding and has taken issue with the entire 'stop and search' transaction (not just the canine sniff) is well-founded in his prior pleadings and complaints." *Id.* at 11. In particular he notes paragraph ten of each of his complaints which says that "being pulled over for no apparent reason by Law Enforcement is never a good situation in [his] experience." *Id.* at 16. He submits that as a pro se complainant, he should be held to "less stringent standards." *Id.* at 18 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Mr. Plourde next says that he is "unsure why [the state takes issue with his "unilaterally" amended complaint], as amending a complaint in response to a motion to dismiss is a matter of right under" Federal Rule of Civil Procedure 15(a)(B). *Id.* at 21. Mr. Plourde says that he has since filed a motion to amend pursuant to Fed. R. Civ. P 15(a)(2), *see Mot. to Am.*, and "has removed ¶¶ 14 – 15 [from his unilaterally

filed Fifth Amended Complaint], bringing his denial of having been speeding back to the identical form of his Fourth Amended Complaint, **which he argues still contains the denial of speeding and the associated seeking of recompense for that situation**." *Id.* at 22 (emphasis in original).

As to qualified immunity, Mr. Plourde cites *Illinois v. Caballes* for the proposition that "the initial traffic stop must be 'concededly lawful.'" *Id.* at 25. He says that "no evidence has been produced to show that the initial seizure . . . was lawful" and "maintains unequivocally that he was not speeding to begin with and that both the traffic stop and the subsequent canine sniff were therefore unlawful." *Id.* at 25.

Mr. Plourde also argues that because "[t]he canine sniff ordered by Trooper Cejka and conducted by Trooper Verhille unnecessarily prolonged the mission of the traffic stop," it was impermissible under *Caballes*. *Id.* at 25. He argues that issuance of a verbal warning should have taken "[t]en seconds or less" and that the traffic stop was "clearly prolonged beyond the time *reasonably required* to issue [him] a verbal warning." *Id.* at 26 (emphasis in original). First, he points out that Trooper Cejka did not have his canine with him, had to call for Trooper Verhille, and then had to wait for Trooper Verhille to unload his canine unit and perform the search. *Id.* at 26-27. He contends that the state's insistence that "the entire chain of events took 'less than 3 minutes . . . is disingenuous . . . when really what is at issue . . . [is] if the traffic stop was unnecessarily and unreasonably prolonged." *Id.* at 27. Mr. Plourde says that "[t]he case citations relied upon by [t]he State . . . are instructive rather

than determinative" and distinguishes each of the cases as "contain[ing] extenuating circumstances that were not present in [his own] detention." *Id.* at 28-29.

Mr. Plourde further contends that "[t]he canine search continued unnecessarily after the offending item – the piece of pizza – had been discovered by the canine and therefore any and all subsequent search of the Plaintiff's vehicle violated the Plaintiff's Fourth Amendment Rights." *Id.* at 33. Once the pizza was discovered, Mr. Plourde argues, "there was no more probable cause." *Id.*

### C.   Defendants' Reply

In reply, the Defendants say that Exhibit 1-B to their motion to dismiss, Trooper Cejka's dashcam video, "establishes the duration of the only activity relevant to Plaintiff's claim: the initial exterior canine sniff prior to the canine alerting." *Defs.' Reply* at 1. The Defendants argue that "[w]hether the duration of that portion of the stop was unreasonable is a question of law." *Id.* (citing *St. Hilaire v. City of Laconia*, 71 F.3d 20, 27 (1st Cir. 1995)). They say that "[t]he law is clear that the less than three minutes between initiation of the stop and the canine alert independently justifying a further interior search does not rise to the level of a colorable constitutional violation – let alone violation of 'clearly established law.'" *Id.* at 1-2.

## IV.   GLEN PLOURDE'S MOTION TO AMEND

Because many of Mr. Plourde's existing claims turn on whether he was lawfully pulled over for speeding, the Court first considers Mr. Plourde's motion to amend his complaint to add a claim that the traffic stop was unconstitutional. Mr. Plourde seeks leave to add the following paragraphs to his operative complaint:

14. Plaintiff denies that he was speeding at any time and maintains that he was maintaining the lawful speed limit at all times. Plaintiff therefore asserts that this initial seizure by Trooper Cejka of his person and vehicle lacked probable cause and was therefore unlawful.

15. *Illinois v. Caballes*, 543 U.S. 405 (2005) relies on the fact that the initial traffic stop must be "concededly lawful." The Plaintiff denies that he was speeding and asserts that the seizure of his person and vehicle lacked probable cause and was unlawful, and furthermore notes that there are no facts in evidence that indicate the Plaintiff was speeding at all.

*Pl.'s Mot. to Am.* at 2.

### A.   Legal Standard

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading "only with the opposing party's written consent or the court's leave" once the time to amend "as a matter of course" has passed. FED. R. CIV. P. 15(a)(2). Although "[t]he court should freely give leave [to amend] when justice so requires," *id.*, "[t]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Thurlow v. York Hosp.*, No. 2:16-cv-179-NT, 2017 U.S. Dist. LEXIS 3187, at *8 (D. Me. Jan. 10, 2017) (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (WRIGHT & MILLER)). The Court may deny a request to amend the complaint if "the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Id.* at *8-9 (alterations in *Thurlow*) (quoting *Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013)).

If the plaintiff wishes to add a claim on which the statute of limitations has run, Rule 15 further provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "The addition of new claims to an amended pleading does not alone defeat relation back; the question instead is whether the initial pleading provided a defendant with adequate notice of the potential new claims." *Badio v. G4S Sol. USA*, No. 19-cv-12591-ADB, 2021 U.S. Dist. LEXIS 5295, at *9 (D. Mass. Jan. 12, 2021) (quoting *Quaak v. Dexia, S.A.*, 445 F. Supp. 2d 130, 137 (D. Mass. 2006)). However, "a [party] does not satisfy the Rule 15 'relation back' standard merely by raising some type of [claim] in the original petition, and then amending the petition to assert another . . . claim based upon an entirely distinct type of [conduct]." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)).

### 1.   Whether the Plaintiff's Amendment Relates Back Under Rule 15(c)(1)(B)

The Defendants first argue that Mr. Plourde's amendment is untimely unless the newly asserted claim relates back to the original filing under Rule 15(c)(1)(B). *Defs.' Second Mot. to Dismiss* at 6-7. The parties do not dispute that the cause of action accrued on November 30, 2013, or that Mr. Plourde's claim is subject to a six-year statute of limitations period pursuant to 14 M.R.S. § 752. *See Pl.'s Opp'n* at 8.

The Defendants say that Mr. Plourde's assertion that "he was stopped for no reason" is "a new allegation" and thus does not relate back to the original complaint. *Defs.' Second Mot. to Dismiss* at 8. The Court disagrees and concludes that the Defendants' argument mischaracterizes the allegations in Mr. Plourde's earlier complaints.

14

Mr. Plourde filed his original Complaint on October 23, 2019, and he alleged in paragraph 10 of his original complaint:

> On or about December 1 2013, Plaintiff was returning to his former residence in Ellington, Connecticut after visiting his family for Thanksgiving when he was pulled over by Unknown Maine State Police Officer # 1 ("Officer#1") on I-295 approximately 10 miles south of the Gardiner, Maine tollbooth. <u>Plaintiff was rightfully fearful and unnerved as he had, to the best of his recollection, been maintaining the speed limit</u> and being pulled over by the MSP is never a good experience in the Plaintiff's case.

*Compl.* ¶ 10 (emphasis supplied).

Mr. Plourde reiterated and slightly expanded this allegation in his First Amended Complaint on November 8, 2019—both prior to the expiration of the six-year limitations period. *See Compl.*; *First Am. Compl.* ¶ 27 (Plaintiff "was, to the best of his knowledge, maintaining the speed limit: and was "pulled over for no apparent reason"). He does not expressly state that he is challenging the legality of the initial traffic stop but he has maintained from the outset of this action that he was not speeding and that the state trooper stopped his vehicle for no apparent reason. He incorporated this allegation into each count in the First Amended Complaint, *see id.* ¶¶ 670-672, and has included this allegation in each of his subsequent amended complaints. *See Pl.'s Opp'n* at 12-16.

To the extent that Rule 15(c)(1)(B) exists to ensure that an "alteration of the original pleading is [not] so substantial that it cannot be said that [the] defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim or defense," WRIGHT & MILLER § 1497, each of Mr. Plourde's complaints has put the Defendants on notice of his position that he was "pulled over

for no apparent reason."  The Defendants therefore "ought to have been able to anticipate or should have expected that the character of the original claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question," in this case, the legality of the stop itself. *Id.; see also Luckett v. Conlan*, 561 F. Supp. 2d 970, 975 (N.D. Ill. 2008) (holding that a conspiracy claim that defendants deprived the plaintiff of his constitutional rights related back because the original complaint "emphasized there was no legal cause for the . . . arrest and subsequent malicious prosecution" and that "[s]uch emphasis should have notified Defendants that Plaintiff's Complaint, in part, concerned the cause of the . . . arrest").

Furthermore, the Defendants misinterpret Rule 15(c)(1)(B).  The proper test is not whether Mr. Plourde is making "a new allegation," but rather whether that new allegation arises out of the same "conduct, transaction, or occurrence."  The Court finds that it does.  Mr. Plourde is challenging the legality of the same traffic stop on November 30, 2013, that spurred the dog sniff he alleges was in violation of his Fourth Amendment rights.  Rule 15(c)(1)(B) does not require perfect pleadings and the Rule specifically allows relation back to conduct that the plaintiff previously "attempted" to set out.  Thus, Mr. Plourde's original references to his position that Trooper Cejka lacked justification to pull him over, while not expansive, are sufficient to justify relating his current allegations back to his original, within-time pleadings.

Given that the Defendants were on notice of Mr. Plourde's position on the original traffic stop, the Court liberally construes Mr. Plourde's original Complaint,

consistent with its treatment of pro se litigants. "[A]s a general rule, [courts] are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating that pro se complaints are "to be liberally construed" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). The Court concludes that Mr. Plourde's new amendments relate back to his original complaint.

### 2.    Whether the Plaintiff's Amendment is Futile Under Rule 15(a)(2)

The Defendants next argue that even if Mr. Plourde's amendment relates back to his original complaint, the amendment would be futile under Rule 15(a)(2). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Thurlow*, 2017 U.S. Dist. LEXIS 3187, at * 9 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under FED. R. CIV. P. 12(b)(6)." *Id.* (quoting *Morgan v. Town of Lexington*, 823 F.3d 737, 742 (1st Cir. 2016)). Whether Mr. Plourde's amendment is futile therefore depends on whether Mr. Plourde has validly stated a claim that the traffic stop itself violated his Fourth Amendment rights.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures by state officials. U.S. CONST. amend. IV. The

Supreme Court has established that a traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Wren v. United States*, 517 U.S. 806, 809-10 (1996); *see also United States v. Chhien*, 266 F.3d 1, 5 (1st Cir. 2001) ("A traffic stop, by definition, embodies a detention of the vehicle and its occupants.  It therefore constitutes a seizure within the purview of the Fourth Amendment").  Because a traffic stop is a seizure, "the stop must be supported by a reasonable and articulable suspicion of criminal activity" and "the detention must be reasonable under the circumstances." *Chhien*, 266 F.3d at 6 (first citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), then citing *Wren*, 517 U.S. at 809-10).  "Reasonable suspicion . . . requires more than a naked hunch that a particular person may be engaged in some illicit activity" but "does not require either probable cause or evidence of a direct connection linking the suspect to the suspected crime." *Id.*  Thus, reasonable suspicion "must be determined case by case" while considering "all the attendant circumstances." *Id.*

If an officer reasonably believes a traffic violation has occurred, but later learns they are mistaken, "a vehicle stop is not rendered unconstitutional merely because they were mistaken as to the facts." *United States v. Arias*, 588 F. Supp. 2d 237, 239 (D.R.I. 2008) (citing *United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006)).  "Nor is a vehicle stop rendered unconstitutional simply because the violation was a pretext for seeking to obtain evidence of suspected criminal activity." *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973)); *see also Whren*, 517 U.S. at 813

("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

At the November 30, 2013, traffic stop, Trooper Cejka informed Mr. Plourde that he had been pulled over for speeding. *Fourth Am. Compl.* ¶ 12. Mr. Plourde contends that he was "maintaining the speed limit" and was "pulled over for no apparent reason." *Id.* ¶ 10.

Accepting that Mr. Plourde was not speeding, there is nothing in the dashcam video or in other evidence before the Court suggesting that Trooper Cejka had an objectively reasonable suspicion that Mr. Plourde was violating the law. The Defendants argue that there is a "significant divergence between the allegations of Plaintiff's Complaint and the recently located dashcam video of the entire traffic stop at issue," which they say "further illustrates the futility of Plaintiff's effort to maintain this action.[3] *Def.'s Second Mot. to Dismiss* at 9-10. However, the dashcam video does not resolve whether Trooper Cejka had a reasonable suspicion that Mr. Plourde was speeding. The dashcam video shows two cars pass Trooper Cejka before he pulls out onto I-295, but Trooper Cejka passes four cars before reaching Mr. Plourde meaning that the video does not show Mr. Plourde pass Trooper Cejka on I-295. When Trooper Cejka approaches Mr. Plourde's vehicle there are no visual indications that Mr. Plourde is speeding nor is there any audio. Based on the record

---

[3]     The Defendants cite Plaintiff's Fourth Amended Complaint, which states that Mr. Plourde "thought the purpose of the stop was implicitly understood as 'speeding,'" *Defs.' Second Mot. to Dismiss* at 6, as if to imply that Mr. Plourde has conceded that he was speeding. However, Mr. Plourde's statement is merely an acknowledgement of Trooper Cejka's stated basis for the pullover, as explained to Mr. Plourde during the stop.

before the Court and accepting Mr. Plourde's allegations as true, he has stated a plausible claim that he was not speeding and that the initial stop was in violation of his Fourth Amendment Rights.

### 3.   Conclusion

Mr. Plourde's efforts to amend his complaint are not futile and can withstand a motion to dismiss. *See Chhien*, 266 F.3d at 6. Moreover, Mr. Plourde's claim relates back to the time of filing under Rule 15(c)(1)(B).

## V.   MOTION TO DISMISS

The Court next considers the pending motion to dismiss and whether Mr. Plourde has stated a claim on which relief can be granted.

### A.   Legal Standard

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State*

*Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)).  This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

Motions to dismiss require a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## B. Discussion

Troopers Cejka and Verhille argue that Mr. Plourde has failed to state a claim on which relief can be granted because they are protected by qualified immunity. *Defs.' Second Mot. to Dismiss* at 10.

"Qualified immunity is a doctrine that shelters government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)).  The purpose of the doctrine is to "allow public officials to perform discretionary tasks without the constant threat of legal liability," *Morelli v. Webster*, 552 F.3d 12, 18 (1st Cir. 2009), and to protect "all but the plainly incompetent [and] those who knowingly violate the law."  *Id.* (alteration in *Morelli*) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[T]he applicability vel non of the qualified immunity doctrine should be determined at the earliest practicable stage in the case."  *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004)).

> The invocation of qualified immunity requires the Court to consider:

> (i) whether the plaintiff's proffered version of the facts, if true, makes out a violation of a constitutionally protected right; (ii) if so, whether that right was clearly established at the time of the putative violation; and (iii) if the answers to the preceding two queries are affirmative, whether a reasonable public official, situated similarly to the defendant, should have understood the challenged act or omission to violate the discerned right.

*Morelli*, 552 F.3d at 18.

"A clearly established right is one sufficiently defined at a level of specificity that would put a state actor (such as a police officer) on fair notice that his specific actions offended the Constitution."  *Id.* at 23.  For law to be "clearly established" it "must be particularized to the facts of the case," *McKenney*, 873 F.3d at 82 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)), meaning that the court "should not over-rely on precedents that are 'cast at a high level of generality.'"  *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).  However, "there need not be 'a case directly on point' to satisfy the second step of the qualified

immunity paradigm.'" *Id.* at 82-83 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

### 1.    The Initial Stop

As discussed in the Court's analysis of Mr. Plourde's motion to amend, it was well established as of November 30, 2013, that a traffic stop constitutes a seizure under the Fourth Amendment. *See Whren*, 517 U.S. at 809-10.  Furthermore, it was also clearly established that an officer must have "reasonable and articulable suspicion" that a driver is engaged in illegal conduct before an officer may pull them over.  Here, Mr. Plourde maintains that he was not speeding.  Accepting this fact as true, absent any other indications of illegal conduct on the record before the Court, Trooper Cejka did not have reasonable suspicion to pull over Mr. Plourde, which would be a clearly established violation of Mr. Plourde's Fourth Amendment rights as of November 30, 2013.  Mr. Plourde has stated a claim on which relief can be granted as Trooper Cejka may not be entitled to qualified immunity regarding the initial stop.

### 2.    Initiation of the Dog Sniff

The Defendants next contend that they are protected by qualified immunity from any Fourth Amendment claims relating to the initiation of the dog sniff.

The Supreme Court has held that "a dog sniff [is] not a search subject to the Fourth Amendment," *Muehler v. Mena*, 544 U.S. 93, 101 (2005), and "compromises no legitimate privacy interest" because a dog sniff "discloses only the presence or absence of narcotics, a contraband item," possession of which is not legal. *Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (internal quotation marks omitted); *see also*

*United States v. Rodriguez-Morales*, 929 F.2d 780, 788 (1st Cir. 1991) ("[S]ubjecting the exterior of such a motor vehicle to the olfactory genius of a drug detection dog does not infringe upon the vehicle owner's fourth amendment rights"); *United States v. Giuffrida*, Nos. 1:11-cr-00095-JAW-1; 1:11-cr-00095-JAW-2, 2012 U.S. Dist. LEXIS 6843, at *15 (D. Me. Jan. 19, 2012) ("As a general rule, an alert by a well-trained detection dog that is with an officer who is legitimately on the scene does not rise to the level of a Fourth Amendment concern because individuals do not have a legitimate expectation of privacy in the odor emitted by contraband items in their possession" (citing *Caballes*, 543 U.S. at 408-409)).  Thus, it was clearly established as of November 30, 2013, that if a suspect is lawfully stopped, a subsequent dog sniff is not a "search" pursuant to the Fourth Amendment and the officer need not have reasonable suspicion before performing the sniff.  *See Rodriguez-Morales*, 929 F.2d at 788.

Assuming that Trooper Cejka had reasonable suspicion to believe that Mr. Plourde was speeding and thus lawfully pulled him over, it was not a Fourth Amendment violation for Troopers Cejka and Verhille to have conducted the dog sniff. *See United States v. Place*, 462 U.S. 696, 707 (1983); *Giuffrida*, 2012 U.S. Dist. LEXIS 6843, at *18 ("Officer Hammond's use of Dorsta to conduct a canine-assisted, open-air search around the exterior of the vehicle, in and of itself, did not implicate the Fourth Amendment prohibition against unreasonable searches because Officer Hammond was legitimately in the public parking space and Defendants had no

24

legitimate expectation of privacy in the odors that contraband items were emitting into the open air around the vehicle").

However, the Supreme Court has stated that a "dog sniff . . . conducted while [a party] [i]s being unlawfully detained" may constitute "an unconstitutional seizure." *Caballes*, 543 U.S. at 407-08 (citing *People v. Cox*, 782 N.E.2d 275 (Ill. 2002)). The First Circuit recently reiterated the well-established *Caballes* standard, which has been the law since at least 2005:

> [W]here the police have probable cause to believe that a traffic violation has occurred, the decision to stop an automobile is reasonable under the Fourth Amendment and a police investigation of that violation is justified.

*United States v. Reyes*, __F.4th__, No. 19-2013, 2022 U.S. App. LEXIS 1417, at *25-26 (1st Cir. Jan. 19, 2022) (internal punctuation and citations omitted). The negative implication is that where the police do not have probable cause to believe that a traffic violation has occurred, their decision to stop a vehicle is not reasonable under the Fourth Amendment and a police investigation of a non-existent violation is not justified.

Here, the Court must credit the allegations in Mr. Plourde's Fourth Amended Complaint, including his assertion that he was not violating any laws, including the speed limit on I-295 on November 30, 2013, particularly in light of the absence of any objective evidence to the contrary. Because Mr. Plourde has properly alleged a violation of his Fourth Amendment rights based on the alleged illegality of the traffic stop itself, his claim of a subsequent unconstitutional K-9 search occurring during that traffic stop similarly withstands dismissal. If Trooper Cejka did not have

reasonable suspicion to believe that Mr. Plourde was speeding and the initial traffic stop may have been in violation of Mr. Plourde's Fourth Amendment rights, any subsequent dog sniff was unconstitutional, a principle clearly established at the time of the traffic stop.  Mr. Plourde has sufficiently stated a claim on which relief can be granted.

### 3.    The Duration of the Dog Sniff

Finally, the Defendants argue that it was well established at the time of the traffic stop that the dog sniff did not unconstitutionally prolong the stop.  *Defs.' Second Mot. to Dismiss* at 18-20.

As a general rule, "conducting a dog sniff [does] not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy." *Caballes*, 543 U.S. at 408.  However, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* at 407.

Even though the Defendants argue that the dog sniff in this case was not prolonged, the Court may not reach this issue on Defendants' motion to dismiss.  The reason is that, as the Court just explained, it must credit the Plaintiff's assertion that the trooper did not have probable cause to stop his vehicle to begin with.  The issue of prolongation must assume, contrary to the allegations in the Fourth Amended Complaint, that the initial traffic stop was legal.  The Court will leave for another

day whether, if the stop was legal, the dog sniff unreasonably prolonged the traffic stop of Mr. Plourde on November 30, 2013.

## VI.   CONCLUSION

The Court GRANTS Mr. Plourde's Motion to Amend (ECF No. 84) and DENIES the Defendants' Motions to Dismiss (ECF Nos. 76 and 81).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February, 2022

27