UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLEN PLOURDE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-00486-JAW |
| | ) |
| MAINE STATE POLICE | ) |
| TROOPER ROBERT CEJKA | ) |
| and MAINE STATE POLICE | ) |
| TROOPER ERIC VERHILLE | ) |
| | ) |
|    Defendants. | ) |

**ORDER AFFIRMING ORDERS ON MOTION TO COMPEL**

A plaintiff seeks to compel discovery of evidence relating to a motor vehicle stop from defendant officers. The Magistrate Judge issued two orders granting in part and denying in part his motion. The plaintiff filed objections to each order. The Court rejects those objections and affirms the Magistrate Judge's orders. Consistent with the Magistrate Judge's order, the Court also orders the defendants to provide records relating to the canine unit involved in the incident.

**I.    PROCEDURAL HISTORY**

On October 23, 2019, Glen Plourde filed a pro se complaint against the state of Maine and two unknown Maine State Troopers in connection with a November 30, 2013, traffic stop.[1] *Compl.* (ECF No. 1) (*Compl.*). He asserted claims under 42 U.S.C. § 1983, alleging various constitutional violations and a conspiracy between agents of

---

[1]    The Maine State Troopers have since been identified as Robert Cejka and Eric Verhille (Defendants), now the only remaining defendants.

the state of Maine, as well as claims under Article 1, Section 5 of the Maine Constitution. *Id.* ¶¶ 41-102. On November 8, 2019, Mr. Plourde filed an amended complaint, in which he greatly expanded the scope of the conspiracy. *Am. Compl.* (ECF No. 8) (*First Am. Compl.*).

Over a period of nearly three years since, in extreme leniency to Mr. Plourde, the Court has permitted him to amend his complaint six additional times, and Mr. Plourde filed his Seventh Amended Complaint on September 14, 2022. *Seventh Am. Compl.* (ECF No. 114). On September 21, 2022, the Defendants filed their answer. *Answer to Pl.'s Seventh Am. Compl.* (ECF No. 116).

On October 28, 2022, the parties filed their final pretrial memoranda. *Pretrial Mem.* (ECF No. 121); *Defs.' Pretrial Mem.* (ECF No. 122). On November 3, 2022, the Defendants notified the Court of their intent to file a motion for summary judgment, *Defs.' Notice of Intent to File Mot. for Summ. J.* (ECF No. 126). On November 23, 2022, Mr. Plourde filed a motion to compel discovery, *Mot. to Compel Discovery* (ECF No. 130) (*Pl.'s Mot.*). Mr. Plourde also filed that day a motion to resolve discovery disputes before summary judgment, *Mot. to Resolve Discovery Disputes Before Proceeding to Summ. J. Pre-Filing Conference* (ECF No. 131), which the Court granted five days later. *Order Granting Mot. to Resolve Discovery Disputes Before Proceeding to Summ. J. Prefiling Conference* (ECF No. 132).

On December 14, 2022, the Defendants responded to Mr. Plourde's motion to compel, *Defs.' Opp'n to Pl.'s Mot. to Compel* (ECF No. 134) (*Defs.' Opp'n*), and on January 6, 2023, Mr. Plourde filed his reply. *Pl.'s Reply to Defs.' Opp'n to Mot. to*

*Compel* (ECF No. 137) (*Pl.'s Reply*).  On February 21, 2023, the Magistrate Judge ruled on the motion to compel.  *Order on Mot. to Compel* (ECF No. 138).

On March 7, 2023, the Defendants filed a brief pursuant to the Magistrate Judge's Order.  *Defs.' Br. Pursuant to Feb. 21, 2023 Order* (ECF No. 140) (*Defs.' Br.*).  On March 10, 2023, Mr. Plourde filed an objection to the order, *Obj. to 02/21/23 Order on Pl.'s Mot. to Compel* (ECF No. 141) (*First Obj.*), and then five days later the Magistrate Judge filed a supplemental order.  *Supplemental Order on Pl.'s Mot. to Compel* (ECF No. 142) (*Supplemental Order*).  On March 23, 2023, the Defendants responded to Mr. Plourde's objection.  *Defs.' Resp. to Pl.'s Obj. to Feb. 21, 2023 Order on Pl.'s Mot. to Compel* (ECF No. 143) (*Defs.' Resp.*).  Finally, on April 3, 2023, Mr. Plourde filed an objection to the Magistrate Judge's supplemental order.  *Obj. to 03/15/23 Supp. Order on Pl.'s Mot. to Compel* (ECF No. 144) (*Second Obj.*).

## II.     DISCUSSION

### A.     The Standard for Review

Federal Rule of Civil Procedure 72 sets out two separate standards of review for a district judge reviewing a magistrate judge's determinations.  *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); FED. R. CIV. P. 72(a-b).  When a magistrate judge decides a non-dispositive motion, the district judge may, given a timely objection, set aside the order if it "is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).  Absent a timely objection, the order stands unless the district judge concludes that even without objection, the order is clearly erroneous or contrary to law.  *Id.*  When, however, a magistrate judge passes upon a dispositive motion, the magistrate judge issues a recommended decision, and if there is a timely objection,

3

the district judge must engage in de novo review. FED. R. CIV. P. 72(b). Finally, when a magistrate judge decides a question of law in a Rule 72(a) non-dispositive motion, "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard [for non-dispositive motions] and review under Rule 72(b)'s de novo standard [for dispositive motions.]" *Powershare*, 597 F.3d at 15.

### B. Application

As a threshold matter, the Magistrate Judge issued his rulings as orders and, because Mr. Plourde's motion to compel discovery is plainly non-dispositive, Rule 72(a)'s standard of review applies, and the Court may set aside the Magistrate Judge's orders only if they "[are] clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

Through the Magistrate Judge's orders and the ongoing discovery process, an initially complex and sprawling discovery dispute has now been whittled down to a final few contested issues. Mr. Plourde's forty-page motion to compel sought voluminous discovery, including audio and video recordings, radio logs and transcripts, the officers' disciplinary history and prior lawsuits, and canine records. *Pl.'s Mot.* at 1-40. The Magistrate Judge's initial order and supplementary order, granting in part and denying in part the motion to compel, combined with the Defendants' brief responding to the order, appear to have resolved many of these disputes. *See Order on Mot. to Compel* at 10-11 (compelling Defendants to produce records or written explanations relating to eleven categories of evidence); *Defs.' Br.* at 1-10 (responding to the Magistrate Judge's order); *Supplemental Order* at 1-5

4

(responding to the Defendants' brief and ordering further production). Mr. Plourde's objections to the orders are limited, and he notes that:

> Plaintiff finds that "objection" is a misnomer for this document, as he does [not] necessarily object to any of the findings of The Court in its 02/21/23 order, although he believes that The Court has overlooked or misapprehended some of the plaintiff's discovery requests that would lead to additional discoverable materials, and thus he files this "objection" in the manner prescribed by Fed. R. Civ. P. 72 and District of Maine Local Rule 72.1(b) . . .

*First Obj.* at 1; *Second Obj.* at 1-2.

Mr. Plourde expresses dissatisfaction with the Magistrate Judge's orders as they relate to seven categories of evidence: (1) Trooper Cejka's dashcam video; (2) body camera footage; (3) audio recordings related to the stop; (4) information relating to other lawsuits in which the troopers were named as defendants; (5) the Defendants' disciplinary records;[2,3] (6) information on standard police procedures; and (7) reports relating to the canine involved in the stop. *First Obj.* at 1-8; *Second Obj.* at 2-4. The Court considers his objections in turn.

### 1.     Trooper Cejka's Dashcam Video

The Defendants previously produced Trooper Cejka's Dashcam Video of the traffic stop, but Mr. Plourde is concerned that the audio and video seem to be misaligned. "There apparently is no audio during the first portion of the video

---

[2]     Mr. Plourde's first objection includes an eighth category relating to his request that Defendants "describe any discipline or internal investigations they have been the subject of as police officers," and he insists that the Court "should order the production of this information." *Id.* at 7-8. This is functionally equivalent to his fifth objection, maintaining that the Court should order the production of "records questioning defendants' performance as police officers, including but not limited to disciplinary records or internal investigations." *Id.* at 5. The Court combines these identical objections into one.

[3]     Mr. Plourde only objects to the Magistrate Judge's supplemental order as it relates to this category of evidence and the Court combines its analysis of Mr. Plourde's two objections on this issue.

5

recording and the video ends before the audio ends." *Order on Mot. to Compel* at 4. The Magistrate Judge observed that "reason for the discrepancy is not clear but is potentially explained as follows: (1) the audio and video were captured with different devices which were turned on and off at different times, (2) the audio and video tracks are misaligned in the digital file submitted to the Court, or (3) portions were muted or redacted pursuant to an assertion of privilege or for some other reason." *Id.* The Magistrate Judge ordered the Defendants to review the recording and file a written explanation for this discrepancy. *Id.* at 10.

>   Responding to the Magistrate Judge's order, the Defendants explained:
>
>   The video and audio components of the recording produced by Defendants on March 15, 2022 in connection with Defendants' initial disclosures ("13.11.30 Plourde.mp4") are in sync. As of November 30, 2013, the video and audio recording in Robert Cejka's cruiser began upon activation of the cruiser's forward facing emergency lights. In the recording, which is a true, accurate, and complete copy of the DVD maintained by the Maine State Police, there is a delay between the beginning of the video and the beginning of the audio. The DVD from which the file was obtained was, consistent with the usual practice of the Maine State Police, created shortly after November 30, 2013 and stored in the usual course of the operations of the Maine State Police. The initial delay between initiation of the video and audio portions of the recording is, upon information and belief, a result of the manner in which the recording function in the cruiser operated. There has been no redaction or alteration of that video/audio.

*Defs.' Br.* at 2. Mr. Plourde is not an ECF filer and it is not clear that he received the Defendant's brief prior to filing his first objection three days later.

Mr. Plourde's objection notes that he requested an "unedited" and/or "complete" version of the dashcam video. *First Obj.* at 2. He states that he now "does not necessarily object to the [Magistrate Judge's] order" for a written explanation,

6

but "he additionally seeks a complete resubmission" of the dashcam video. *Id.* To the extent that Mr. Plourde's filing is styled as an objection to the Magistrate Judge's order, Mr. Plourde has elsewhere stated that he "does not necessarily object" and, moreover, the Magistrate Judge's order compelling defendants to provide a written explanation for the discrepancy is plainly not "clearly erroneous or . . . contrary to law." FED. R. CIV. P. 72(a). To the extent that he separately requests resubmission of the video, the Court finds no basis for that request. The video is already in the record and Defendants have sworn that "there has been no redaction or alteration of that video/audio." *Defs.' Br.* at 2. Regardless, the Defendants resubmitted the video in response to Mr. Plourde's objection, *see Defs.' Resp.*, Attach. 1., granting Mr. Plourde's request and mooting his objection.

### 2.     Body Camera Footage

Citing a good faith belief that the troopers were wearing body cameras during the incident, Mr. Plourde requests all relevant body camera footage. *First Obj.* at 2-3. The Defendants have previously asserted under oath that no such footage exits. *Mot. to Compel*, Attach. 3, *Def. Robert Cejka's Resp. to Pl.'s First Req. for Production* at 1 (*Cejka Resp. to RFP*). The Magistrate Judge noted that Mr. Plourde "does not accept Defendants' assertion that there are no other audio or video recordings of the stop," but "he provides no evidence that state troopers regularly wore body cameras in Maine in 2013, when the stop occurred," and "[t]he record lacks any evidence to suggest that Defendants created additional recordings or were wearing body cameras or additional audio devices at the time of the stop." *Order on Mot. to Compel* at 2-3.

7

Mr. Plourde's objection asks the Court to require the Defendants to file a written explanation regarding the status of any body cameras on the day of the stop. *First Obj.* at 3. The Defendants responded that "[c]onsistent with Defendants' responses to discovery, no audio or video materials responsive to Plaintiff's requests has been withheld – including the non-existent body-camera footage which Plaintiff continues to seek." *Defs.' Resp.* at 4. Again, Mr. Plourde has not offered any evidence or caselaw to suggest that the Magistrate Judge's order is erroneous and, moreover, the Defendants' response—providing Mr. Plourde the written explanation he seeks to compel—moots his objection.

### 3. Additional Recordings of the Troopers' Communications

Mr. Plourde asserts that he "has sought all audio recordings, such as radio logs or transcripts [between officers] . . . from the defendants as it concerns this stop and search," but that the Court has "not ordered the production of any audio recordings, nor has it ordered an explanation as to why none apparently exist, nor has it even required the defendant[s] to say whether such recordings exist at all." *First Obj* at 3.

This issue is nearly identical to the dispute over the body camera footage. Mr. Plourde previously requested "[a]ll audio materials, included but not limited to; radio communications, recorded conversations or statements, etc." related to the stop and the Defendants replied that all responsive documents had already been produced. *Cejka Resp. to RFP* at 2. The Magistrate Judge observed that "Plaintiff contends that Defendants have failed to disclose logs or transcripts of radio communications between officers related to the traffic stop" but "provides no evidence to support his

8

assertion that Defendants or the Maine State Police ordinarily creates such documents or did so in this instance." *Order on Mot. to Compel* at 4. The Defendants responded to Mr. Plourde's objection that "[c]onsistent with Defendants' responses to discovery, no audio or video materials responsive to Plaintiff's requests has been withheld." *Defs.' Resp.* at 4. Again, Mr. Plourde's objection is both unsupported and moot.

### 4. Information About Prior Lawsuits

Mr. Plourde requested information about all prior lawsuits in which Troopers Cejka and Verhille were named as defendants. The Magistrate Judge granted that request with the modification that "the discoverable information be limited to cases against Defendants based on their conduct as law enforcement officers." *Order on Mot. to Compel* at 6. Mr. Plourde now objects to that modification, contending that additional lawsuits, if any exist, may be relevant as to Defendants' credibility and that they are public information. *First Obj.* at 4-5.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The Court concludes that the Magistrate Judge's order strikes a fair balance regarding relevance and proportionality by compelling disclosure of any suits

9

arising from defendants conduct as officers, but not suits unrelated to their official capacity. Even if the Court disagreed with that judgment, Mr. Plourde has not offered any evidence or caselaw suggesting that the Magistrate Judge's decision was clearly erroneous or contrary to law.

### 5. The Defendants' Disciplinary Records

Mr. Plourde has also requested records "questioning Defendants' performance as police officers, such as disciplinary records or the results of internal investigations" and the Magistrate Judge ordered the Defendants to file a written argument explaining "why the state law exempting personnel files from the state's freedom of access law prohibits the production of or should limit this Court's ability to order the production of the information in this federal civil rights lawsuit." *Order on Mot. to Compel* at 6. After reviewing the Defendants' argument, the Magistrate Judge ordered:

> To the extent Defendants have control or right of access to responsive documents, Plaintiff is entitled to the documents. Defendants shall produce all documents that reflect investigations of or discipline resulting from (1) Defendants' conduct in connection with the stop of motor vehicles and the search of persons, motor vehicles, or structures, or (2) Defendants' alleged untruthfulness. Defendants may redact personally identifiable information from the documents. The information is subject to a protective order: Plaintiff may only use the information for purposes of this litigation.

*Supplemental Order* at 3.

Mr. Plourde submits that he "agrees with [the Magistrate Judge's] finding that these records are discoverable, however, plaintiff also believes that [the Magistrate Judge] has narrowed the scope of what should be otherwise discoverable records and

10

has been ambiguous in the process of doing so." *Second Obj.* at 3. He asserts that the Magistrate Judge erred because "[t]here are no limitations on what 'prior complaints and disciplinary records' are discoverable to § 1983 plaintiffs in [the Magistrate Judge's] case citations," and his order is "contrary to what the above case citations have determined is discoverable." *Id.* (citing *Correia v. Town of Framingham*, No. CIV. 12-10828-NMG, 2013 U.S. Dist. LEXIS 32290, at *7 (D. Mass. Mar. 8, 2013) and *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987)). He requests "an amended order that orders the discovery of all prior complaints and disciplinary records . . . consistent with . . . [*Kelly*] as well as [*Correia*]." *Id.* at 4.

Mr. Plourde's argument relies on a misreading of *Kelly* and *Correia*. As the Magistrate Judge observed, those cases stand for the proposition that "[f]ederal courts ordinarily permit § 1983 plaintiffs to discover prior complaints and disciplinary records from law enforcement defendants despite state public records exceptions or privileges." *Supplemental Order* at 2-3. Such discovery, however, is not limitless, and is instead subject to a balancing test. *See Kelly*, 114 F.R.D. at 662 ("[I]t is appropriate to adopt a balancing test that is moderately pre-weighted in favor of disclosure" but "the pre-weighting in favor of disclosure should not be so substantial that it is virtually impossible for law enforcement to protect any information . . .. Such substantial pre-weighting would render the official information privilege virtually meaningless"); *Correia*, 2013 U.S. Dist. LEXIS 32290, at *6-7 (finding that the plaintiff's request for all documents relating to defendant police officers' personnel file and complaints was "far too broad" and that "[c]onsidering all of these

11

circumstances, the plaintiffs are not entitled to the sweeping categories of documents they have sought," but were entitled to "a more focused subset of such documents"). In *Correia*, that "more focused subset" consisted of files related to the plaintiffs' case and including substantiated complaints that resulted in discipline and "involved allegations of untruthfulness." *Id.* at *7.

The Magistrate Judge's order, compelling production of all investigatory and/or disciplinary records resulting from the Defendants' conduct in connection with vehicle stops, searches, or alleged untruthfulness reasonably balances the factors described in *Kelly*. Mr. Plourde's assertion that the order is contrary to the holdings of *Kelly* and *Correia* is incorrect, and he offers no other authority that it is erroneous or contrary to established law.

### 6.   Information Relating to Police Procedures

Mr. Plourde requested a 2013 law enforcement manual and the standard operating procedures for police canines in 2013. Observing that "Defendants asserted that the documents are not in their possession or control, that the documents are not relevant, and that the documents are available elsewhere, such as online or through public libraries," the Magistrate Judge denied Mr. Plourde's request because "[t]he material appears to be available from other sources and Plaintiff has produced no evidence to support a finding that the material is within Defendants' possession and control." *Order on Mot. to Compel* at 6. Mr. Plourde objects that he has a reasonable belief that the Defendants possess these materials and reiterates his request that

Defendants be compelled to produce them. *First Obj.* at 5-6. In response, the Defendants assert:

> Upon information and belief, this publication from Swan's Island Press is a compendium of Maine criminal statutes. *See* National Criminal Justice Reference Service Virtual Library (available at https://www.ojp.gov/ncjrs/virtual-library/abstracts/maine-law-enforcement-officers-manual) (last accessed March 20, 2023). The Maine State Law Enforcement Officer's Manual, a privately published compendium, is equally available to Plaintiff at public libraries throughout Maine.

*Defs.' Resp.* at 8. The Court affirms the Magistrate Judge's conclusions that Mr. Plourde has offered no evidence suggesting that the documents are within the Defendants' possession or control and that the information appears to be available elsewhere—including through the "Find in a Library" link available on the webpage cited by the Defendants.

### 7.     Canine Records

Mr. Plourde seeks records relating to the canine unit involved in the vehicle search of his vehicle. He requested "training, certification, and veterinary records to explore whether the canine unit was fit for duty" and the "Defendants produced some certification records from 2013 but asserted that the remainder of the request was overbroad." *Order on Mot. to Compel* at 7. Mr. Plourde also sought "all canine incident reports for the six months preceding the traffic stop but the "Defendants asserted they did not have possession or control of the documents and argued the materials are not sufficiently related to the issues presented in this case." *Id.*

The Magistrate Judge found that the canine's reliability was relevant and he was "not persuaded the documents are not available to Defendants," but also

13

observed that "[t]he request for canine incident reports for a six-month period is overly broad and not proportionate to the needs of the case." *Id.* The Magistrate Judge directed "Defendants to supplement their response to the request for canine-related information," requiring them to "Produce all documents regarding the training, certification, or care rendered to the canine involved in the stop for the three-month period prior to the stop" and "Produce canine incident reports for the two-week period prior to the stop." *Id.* at 7, 11.

The Defendants did not address this issue in their response to the Magistrate Judge's order. Mr. Plourde objected that his request for six months of incident reports was based on the advice of his expert witness and he does not believe two weeks of incident reports will be useful to the expert. *First Obj.* at 6-7. He asks that the Court "order the production of as much incident reports as it is willing to . . . so that a reasonable statistical analysis may be conducted by his expert witness." *Id.* at 7 (emphasis omitted). The Defendants then responded that they had produced the two weeks of incident reports and that "[t]he Court's Order on Plaintiff's Motion to Compel, limiting the scope of Plaintiff's requests is a reasonable application of the relevance and proportionality limits of discovery pursuant to Fed. R. Civ. P. 26(b)(1)." *Defs.' Resp.* at 9-10.

Mr. Plourde contends that two weeks of incident reports is too little and the Defendants respond that it is just right but, as far as the Court can discern, they both appear to have overlooked the Magistrate Judge's order that Defendants also "Produce all documents regarding the training, certification, or care rendered to the

14

canine involved in the stop for the three-month period prior to the stop." *Order on Mot. to Compel* at 11. Nowhere does the record confirm that Defendants complied with (or otherwise responded to) that order. Similarly, Mr. Plourde's objection that the Magistrate Judge compelling two weeks of incident reports is insufficient does not contemplate the three months of other canine records also compelled. The Magistrate Judge's order again reasonably balances proportionality and relevance, and Mr. Plourde has not—aside from asserting that his canine expert would prefer more records—suggested that it is contrary to law. However, Defendants appear not to have complied with the Magistrate Judge's order to provide three months of other canine records and the Court orders them to comply.

### III. CONCLUSION

The Court AFFIRMS the Order on Plaintiff's Motion to Compel (ECF No. 138) and the Supplemental Order on Plaintiff's Motion to Compel (ECF No. 142). The court also ORDERS the Defendants to produce all documents regarding the training, certification, or care rendered to the canine involved in the stop for the three-month period prior to the motor vehicle stop within seven days of this order or show cause as to why they cannot.[4]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 4th day of April, 2022

---

[4] This case is scheduled for a Local Rule 56(h) Pre-Filing Conference at 2:00 p.m. on April 10, 2023. *Notice of Rescheduled Hr'g* (ECF No. 139). For the sake of efficiency, the Court hopes these discovery issues will be resolved before April 10th.

15