UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLEN PLOURDE, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) No. 1:19-cv-00486-JAW |
| MAINE STATE POLICE TROOPER ROBERT CEJKA and MAINE STATE POLICE TROOPER ERIC VERHILLE, | ) ) ) ) ) ) |
|     Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANTS AS EXPERT WITNESSES**

The Court dismisses without prejudice a motion in limine concerning the defendants' designation of themselves as potential experts because their status as expert or lay witnesses is not essential to the resolution of the pending dispositive motion, and defendants' designation may be a strategic prophylactic against the plaintiff's potential objection based on a failure to designate.

**I.  BACKGROUND**

On November 30, 2013, Glen Plourde was driving his motor vehicle on I-295 about ten miles south of the tollbooth at Gardiner, Maine, when he was stopped by Trooper Robert Cejka. *Seventh Am. Compl.* ¶ 9 (ECF No. 114). Trooper Cejka called in the canine unit, and Trooper Eric Verhille arrived at the scene with a canine. *Id.* ¶¶ 20, 27. The canine circled Mr. Plourde's vehicle about six to eight times but failed to alert to anything inside the vehicle. *Id.* ¶ 29. After some time, Trooper Cejka informed Mr. Plourde that the canine had detected marijuana inside the vehicle and

ordered him to exit the vehicle so the Troopers could search it. *Id.* ¶ 38. Ultimately, the Troopers produced an old piece of pizza from inside the vehicle and claimed that the dog alerted on the pizza because it was "just so nasty". *Id.* ¶¶ 52-54, 56. On October 23, 2019, Mr. Plourde filed a lawsuit against the Troopers, the names of whom were unknown to him at the time, alleging the traffic stop and search violated his United States and Maine constitutional rights. *Compl.* (ECF No. 1).

On May 11, 2023, the Troopers filed a motion for summary judgment. *Defs.' Mot. for Summ. J.* (ECF No. 151). On June 9, 2023, Mr. Plourde responded to the Troopers' dispositive motion. *Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 156). On June 22, 2023, the Troopers filed a reply to Mr. Plourde's response. *Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 160).

On May 11, 2023, Mr. Plourde moved to prevent the Trooper Defendants from testifying as expert witnesses. *Mot. to Exclude [D]efs.[] as Expert Witnesses or from providing test. that is considered Expert Witness Test. pursuant to [t]he Fed. R. of Civ. P. or [t]he Fed. R. Evid.* (ECF No. 153) (*Pl.'s Mot.*). On June 8, 2023, the Trooper Defendants responded to the Plaintiff's motion in limine. *Defs.' Opp'n to Pl.'s Mot. to Exclude Defs. as Expert Witnesses* (ECF No. 154) (*Defs.' Opp'n*). On June 22, 2023, Mr. Plourde filed a reply to the Defendants' opposition. *Mem. in Reply to "Defs.' Opp'n to Pl.'s Mot. to Exclude Defs. as Expert Witnesses"* (ECF No. 159).

II.   **EXPERT DESIGNATION**

On August 8, 2022, the Trooper Defendants provided Mr. Plourde with expert designations for both Trooper Cejka and Trooper Verhille. *Pl.'s Mot.*, Attach. 1, *Defs.' Expert Witness Designation*.

### A.   Trooper Cejka's Expert Designation

The Trooper Defendants indicated that Trooper Cejka's "anticipated testimony may include opinion testimony based on his education, training, and experience, pursuant to [Fed. R. Evid.] 701-704 and 705."[1]  *Id.* at 1.  The Defendants listed the following areas of potential expert testimony: (1) "the usual practice of law enforcement officers employed by the Maine State Police in monitoring for traffic violations, including exceeding the speed limit," (2) Trooper Cejka's practice "as of 2013, in monitoring speed on interstate 295, including: speed monitoring equipment used, procedures in operating speed monitoring equipment issued to Maine State Troopers; procedures in setting up and calibrating speed monitoring equipment issued to Maine State Troopers; and the manner in which speed monitoring equipment issued to Maine State Troopers indicates the speed of a particular vehicle." *Id.* at 2.  Trooper Cejka may also testify about "documentation associated with traffic stops which did not result in a citation." *Id.*  Trooper Cejka may additionally testify about "canine unit response times, exterior vehicle sniffs by canine units, interior vehicle canine searches, and the typical duration of those events in comparison to the

---

[1]   The original quotation from the Defendants' expert designation references "Fed. R. Civ. P. 701 – 704 and 705." The Court assumes the Defendants meant to reference the Federal Rules of Evidence, the relevant provisions of which govern opinions and expert testimony, and has altered the quotation accordingly.

3

duration of the exterior canine sniff and subsequent search as depicted in videos exchanged in discovery in this matter." *Id.*

### B. Trooper Verhille's Expert Designation

The Trooper Defendants indicated that Trooper Verhille's anticipated testimony may include "his education, training, and experience as a Maine State Trooper and Certified K-9 Handler relative to the events of November 30, 2013 as alleged in Plaintiff's Complaint" and "the training of and his experience with the canine, Clint, with which he was working during the November 30, 2013 traffic stop at issue in Plaintiff's Complaint." *Id.* at 3-4.

### III. DISCUSSION

Although Mr. Plourde's objection to the expert designations is understandable, it is misplaced. Following the United States Supreme Court decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), there was some uncertainty as to how the law would apply to persons with specialized expertise, typically from employment, who do not rely on academic credentials, learned treatises, or scientific studies. As applicable to this case, the First Circuit has discussed the role of law enforcement witnesses who testify about matters they know because of their work but which would not be common knowledge among the general public. In general, this testimony is admissible as non-expert testimony if "rationally based on the perception of the witness," so long as the testimony is "helpful to . . . the determination of a fact in issue" and "not based on scientific, technical, or other specialized knowledge within

4

the scope of Rule 702." *United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2009) (alteration in original) (quoting FED. R. EVID. 701).

In *Santiago*, however, the First Circuit wrote that testimony about "coded language - - like, for example, testimony about vehicle speed - - can be admissible, depending on its content and other circumstances, either as lay or expert testimony." *Id.* (emphasis supplied). Usually in the context of drug trafficking, the First Circuit has suggested that "[t]ime and again we have stated that Rule 701 lets in 'testimony based on the lay expertise a witness personally acquires through experience, often on the job.'" *United States v. Belanger*, 890 F.3d 13, 25 (1st Cir. 2018) (quoting *United States v. George*, 761 F.3d 42, 59 (1st Cir. 2014) (quoting *Santiago*, 560 F.3d at 66)); *United States v. Agramonte-Quezada*, 30 F.4th 1, 20-21 (1st Cir. 2022).

Here, the Trooper Defendants designated themselves as expert witnesses "out of an abundance of caution, in keeping with the policy of Fed. R. Civ. P. 26". *Def.'s Opp'n* at 6. Even with comfort from the First Circuit, there remains in some minds ambiguity as to whether expert designations of testimony are necessary when the testimony skirts the boundary between lay and expert testimony. To anticipate a possible trial objection, the proponents of law enforcement testimony will often prophylactically designate officers as experts to avoid a discovery objection that the failure to do so deprived the opponent of the testimony of the mandatory disclosures that come with the expert designations. *See* FED. R. CIV. P. 26(a)(2)(A).

Here, the Trooper Defendants have been designated as experts on a wide variety of topics, ranging from speed monitoring calibration to canine training and

procedures. Most First Circuit case law addresses law enforcement testimony concerning drug trafficking conspiracies, and the proposed testimony here strays slightly away from situations where the First Circuit has given its express imprimatur. Viewed in this context, the Court does not understand the expert designations to be a demand from the Defendants that they be treated as experts, but rather a precautionary act by the Defendants that if Mr. Plourde were to object to their testimony on the ground that they are experts, the Defendants will have complied with the requirements of Rule 26 and the Scheduling Order and fully designated each officer as a potential expert. Moreover, from a discovery viewpoint, the Court does not view the Defendants' expert designations as prejudicial to Mr. Plourde.

Mr. Plourde may be worried that if the Court formally recognizes the Troopers as experts, it will add to their credibility before the jury. There are two considerations here. If Mr. Plourde makes it clear that he is not going to object to the Troopers' testimony on the ground that they are experts, the designations may well be moot. But in keeping with the 2000 advisory committee note for Rule 702, if the Troopers testify as experts, the Court will not inform the jury that either Trooper has been deemed an expert. FED. R. EVID. 702, advisory committee's note to 2000 amendments ("The use of the term 'expert' in the Rule does not, however, mean that a jury should actually be informed that a qualified witness is testifying as an 'expert'"). If an expert instruction is given (and the Court has not determined that one should be), the Court

will likely instruct the jury that "[e]xpert opinion testimony should be judged like any other testimony." *See Judge D. Brock Hornby*, DRAFT CIVIL INSTRUCS. ¶ I(F).

For purposes of the pending motion for summary judgment, based on Mr. Plourde's objection, the Court will consider the Troopers' statements of material fact to the extent they are buttressed by the Troopers' supporting evidence as the testimony of lay witnesses with specialized expertise. If the Court does not grant summary judgment and the matter proceeds to trial, the Court will address this issue again but only if Mr. Plourde wishes to press it.

## IV.   CONCLUSION

The Court DISMISSES without prejudice Plaintiff Glen Plourde's Motion to Exclude [D]efendants[] as Expert Witnesses or from providing testimony that is considered Expert Witness Testimony pursuant to The Fed. R. of Civ. P. or The Fed. R. Evid. (ECF No. 153).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2023