UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

GLEN PLOURDE, )
)
Plaintiff, )
)
v. ) No. 1:19-cv-00486-JAW
)
MAINE STATE POLICE )
TROOPER ROBERT CEJKA )
and MAINE STATE POLICE )
TROOPER ERIC VERHILLE, )
)
Defendants. )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Having concluded that an initial traffic stop was lawful, that a canine sniff of the exterior of the plaintiff's vehicle was not a search within the meaning of the Fourth Amendment, that the canine sniff did not unreasonably prolong the traffic stop, and that once the canine alerted to something inside the vehicle, law enforcement officers had probable cause to search its interior, the Court grants the law enforcement officers' motion for summary judgment in a civil lawsuit initiated by the owner and operator of the stopped and searched vehicle.

## I.    BACKGROUND

On October 23, 2019, Glen Plourde filed a pro se complaint against the state of Maine and two unknown Maine State Troopers in connection with a November 30, 2013 traffic stop.[1] *Compl.* (ECF No. 1) (*Compl.*).  Mr. Plourde asserted claims under 42 U.S.C. § 1983, alleging various constitutional violations and a conspiracy among

---

[1]    The Defendants identified the involved Maine State Troopers as Robert Cejka and Eric Verhille, now the only remaining defendants.

agents of the state of Maine, as well as claims under Article 1, section 5 of the Maine Constitution, Maine's analogue to the Fourth Amendment to the United States Constitution.[2]  *Id.* ¶¶ 41-102.  Mr. Plourde's complaint has gone through numerous iterations; the operative complaint is his Seventh Amended Complaint and the two remaining Defendants are Robert Cejka and Eric Verhille (Defendants), both Maine State Troopers.  *Seventh Am. Compl.* (ECF No. 114).  On September 21, 2022, the Defendants filed their answer.  *Answer to Pl.'s Seventh Am. Compl.* (ECF No. 116).

On May 11, 2023, Troopers Cejka and Verhille filed a motion for summary judgment and a statement of undisputed material facts.  *Defs.' Mot. for Summ. J.* (ECF No. 151) (*Defs.' Mot.*); *Defs.' Statement of Material Facts* (ECF No. 152) (DSMF).  On June 9, 2023, Mr. Plourde filed his opposition to the motion, his response to the Defendants' statement of material facts, and his statement of additional material facts.  *Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 156) (*Pl.'s Opp'n*); *Pl.'s Resp. to Defs.' Statement of Material Facts* (ECF No. 157) (PRDSMF); *Id.*, Attach. 1, *Pl.'s Statement of Material Facts* (PSAMF).  On June 22, 2023, the Defendants filed their reply to Mr. Plourde's opposition and their response to his statement of additional material facts.  *Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 160); *Defs.' Reply to Pl.'s Additional Material Facts* (ECF No. 161) (DRPSAMF).

---

[2]      Article 1, section 5 of the Maine Constitution reads:

Section 5.  The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

## II.   STATEMENT OF FACTS

As of November 30, 2013, Robert Cejka and Eric Verhille were Maine State Troopers.[3]  DSMF ¶¶ 1-2; PRDSMF ¶¶ 1-2.

On November 30, 2013, Mr. Plourde was traveling southbound on Interstate 295 back to his apartment in Ellington, Connecticut after visiting his parents in Newburgh, Maine for the Thanksgiving holiday.[4]  PSAMF ¶ 1; DRPSMAF ¶ 1.  Mr. Plourde was pulled over by an unknown Maine State Police (MSP) Trooper whom the state of Maine, pursuant to a lawful subpoena, later identified as Robert Cejka.[5]

---

[3]    Mr. Plourde interposes qualified responses to DSMF ¶¶ 1-2.  PRDSMF ¶¶ 1-2.  While Mr. Plourde concedes that "Background Checks indicate that defendant Robert Cejka was a Maine State Trooper at the time specified," he asserts that "there is no independently verifiable information that it was Robert Cejka" who stopped him on November 30, 2013.  *Id.* ¶ 1.  In support, Mr. Plourde claims there is "little resemblance" between pictures of Trooper Cejka that Mr. Plourde found on the internet and the man in Mr. Plourde's cell phone video and Trooper Cejka's dashcam video.  *Id.*  Mr. Plourde also qualifies his response based on Federal Rule of Civil Procedure 56(d) "because this fact (the positive identity of the man who stopped the Plaintiff) is unavailable to the Plaintiff."  *Id.*
     Regarding Trooper Verhille, Mr. Plourde again concedes that "Background Checks indicate that defendant Eric Verhille was a Maine State Trooper at the time specified" but counters that "there is no independently verifiable information that it was Eric Verhille in possession of the canine" on November 30, 2013.  *Id.* ¶ 2.  In support, Mr. Plourde again refers to pictures he located on the internet, as well as Federal Rule of Civil Procedure 56(d).
     DSMF ¶¶ 1 and 2 assert only that Robert Cejka and Eric Verhille were Maine State Troopers; they do not assert that Trooper Cejka was the individual who stopped Mr. Plourde's vehicle or that Trooper Verhille possessed the canine.  Therefore, the Court rejects Mr. Plourde's qualifications to each paragraph as beyond the scope of the facts asserted.
     Moreover, the notion that these Troopers would assert that they were involved in this stop and thereby be subject to Mr. Plourde's lawsuit, when in fact they were not there, is too remote and speculative to credit.  Finally, if the Court accepted Mr. Plourde's denial, the case would be over, because neither Trooper would be an appropriate defendant.
[4]    The Defendants admit PSAMF ¶ 1 but request that the portion of the statement following "Interstate 295" be stricken on the ground that it is immaterial.  DRPSAMF ¶ 1 (citing *Morrissey v. Bos. Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir. 1995)).  The Court disagrees.  The fact that Mr. Plourde was returning home from spending Thanksgiving with his parents negates any implication that he was driving on I-295 for some nefarious purpose, and the fact he was stopped early in his journey after about one hour of driving from Newburgh is some evidence that he was alert.
[5]    The Defendants admit PSAMF ¶ 2 but request that all portions of the statement beyond "Plaintiff was pulled over by . . . Maine State Police Trooper . . . Robert Cejka" be stricken on the ground that they are immaterial.  DRPSAMF ¶ 2 (citing *Morrissey*, 54 F.3d at 31).  The Court disagrees.  The fact that Trooper Cejka was unknown to Mr. Plourde is relevant to whether there was reasonable suspicion to stop Mr. Plourde's vehicle, and the remainder of the statement explains how Mr. Plourde found out that Trooper Cejka was the individual who stopped him.

PSAMF ¶ 2; DRPSAMF ¶ 2.  Mr. Plourde was not speeding or violating any traffic laws.[6]  PSAMF ¶ 3; DRPSAMF ¶ 3.  Trooper Cejka did not articulate any reason for the traffic stop.[7]  PSAMF ¶ 4; DRPSAMF ¶ 4.

In the early afternoon of November 30, 2013, Trooper Cejka was monitoring traffic for speed violations along Interstate 295.[8]  DSMF ¶ 3; PRDSMF ¶ 3.  Trooper

---

[6]    The Defendants deny PSAMF ¶ 3, citing the affidavit of Trooper Cejka, which states in relevant part that Trooper Cejka's speed-measuring equipment indicated that Mr. Plourde's vehicle was traveling faster than the posted speed limit.  DRPSAMF ¶ 3 (citing DSMF, Attach. 1, *Aff. of Robert Cejka* ¶¶ 4-13 (*Cejka Aff.*)).  Because the Court is required to view disputed facts in the light most favorable to Mr. Plourde as the nonmoving party, the Court rejects the Defendants' denial.

The Defendants also request to strike PSAMF ¶ 3 on the ground that it does not state a fact.  *Id.*  The Court disagrees with the Defendants' characterization of PSAMF ¶ 3 as a legal conclusion and accordingly denies the Defendants' request to strike it.

[7]    The Defendants deny PSAMF ¶ 4, again citing the affidavit of Trooper Cejka, which contains the statement, "I then informed Mr. Plourde that I had stopped him for exceeding the speed limit."  DRPSAMF ¶ 4 (citing *Cejka Aff.* ¶ 19).  The Court rejects the Defendants' denial, as it must view disputed matters in the light most favorable to Mr. Plourde.  The Defendants have supplied the dashcam and audio of Trooper Cejka's encounter with Mr. Plourde; however, the Court was unable to hear or distinguish the initial conversation between Mr. Plourde and Trooper Cejka due mostly to the noise caused by passing traffic, so the audio does not clarify this issue.

The Defendants also request that the Court strike PSAMF ¶ 4 on the ground that it does not state an "additional" fact as required by District of Maine Local Rule 56(c).  Because the substance of PSAMF ¶ 4 nowhere appears in the Defendants' statement of material facts, the Court denies the Defendants' request to strike.

[8]    DSMF ¶ 3 reads: "In the early afternoon of November 30, 2013, Trooper Cejka was conducting traffic enforcement along the northbound side of Interstate 295 in the vicinity of Gardiner, Maine."  Mr. Plourde interposes a qualified response to DSMF ¶ 3, which incorporates the reasoning behind Mr. Plourde's qualification of DSMF ¶ 1.  PRDSMF ¶ 3.  Since DSMF ¶ 3 also does not contain any assertion that it was Trooper Cejka who stopped Mr. Plourde's vehicle, the Court rejects Mr. Plourde's qualification insofar as it rests on this basis as beyond the scope of the fact asserted.

Further, Mr. Plourde claims that DSMF ¶ 3 "is not independently verifiable" and, relying on Federal Rule of Civil Procedure 56(d), he further argues that "this fact is unavailable to the Plaintiff."  *Id.*  As support for DSMF ¶ 3, the Defendants cite paragraphs four and five of the Affidavit of Robert Cejka.  *Cejka Aff.* ¶¶ 4-5.  Because Rule 56 of the Federal Rules of Civil Procedure states that a party may use an affidavit to "support or oppose a motion [for summary judgment]" if the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated," FED. R. CIV. P. 56(c)(4), the Court accepts Trooper Cejka's affidavit as competent supporting evidence for DSMF ¶ 3.  Mr. Plourde's desire to independently verify DSMF ¶ 3, while understandable, does not negate the conclusion that Trooper Cejka's affidavit is admissible for purposes of the pending motion.  Therefore, the Court rejects Mr. Plourde's qualification insofar as it rests on this basis.

In reviewing Trooper Cejka's affidavit, however, the Court found that certain parts of DSMF ¶ 3 are not supported by the cited paragraphs.  For example, the cited paragraphs nowhere reference the northbound side of Interstate 295.  Therefore, the Court has altered DSMF ¶ 3 to conform with the record.

Cejka ensured the calibration of his speed measuring equipment on November 30, 2013 before using that equipment to monitor traffic.[9]   DSMF ¶ 4; PRDSMF ¶ 4. Consistent with his training, experience, and usual practice, Trooper Cejka received an alert from the speed monitoring equipment in his cruiser and observed that the alert identified Mr. Plourde's vehicle as exceeding the posted speed limit of 65 miles per hour by at least 5 miles per hour.[10]   DSMF ¶ 5; PRDSMF ¶ 5.

Trooper Cejka then activated his emergency lights and initiated a pursuit of Mr. Plourde's vehicle.[11]   DSMF ¶ 6; PRDSMF ¶ 6.  From the initiation of the pursuit through the termination of the traffic stop, Trooper Cejka's dashcam video from his cruiser and the microphone audio worn on his uniform accurately reflect what

---

[9]      Mr. Plourde denies DSMF ¶ 4, incorporating the reasoning behind his qualification of DSMF ¶ 1.  PRDSMF ¶ 4.  Additionally, Mr. Plourde denies DSMF ¶ 4 "because this assertion exists nowhere in The Record besides Trooper Cejka's affidavit that was submitted contemporaneously with Defendants' statement of fact."  *Id.*  As noted in the previous footnote, a party's affidavit is competent evidence to support a motion for summary judgment.  FED. R. CIV. P. 56(c)(4).  Further, the First Circuit has not held that a district court may strike an affidavit "solely based on when the affidavit was filed, without evidence of a contradiction between the testimony."  *Verrier v. BlueTriton Brands, Inc.*, No. 2:20-cv-00443-JAW, 2022 U.S. Dist. LEXIS 144116, at *76-77 (D. Me. Aug. 12, 2022) (citing *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 387 (1st Cir. 2016); *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006); and *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir. 1994)).  Because Mr. Plourde has pointed to no contradiction between Trooper Cejka's affidavit and any of his other statements, the Court rejects Mr. Plourde's denial insofar as it is based on the timing of Trooper Cejka's affidavit.  The Court also rejects Mr. Plourde's denial insofar as it rests on the bases for Mr. Plourde's qualified response to DSMF ¶ 3, for the reasons explained in the previous footnote.
        Mr. Plourde's third objection to DSMF ¶ 4 is that Trooper Cejka's statement should be considered expert testimony and therefore inadmissible.  PRDSMF ¶ 4.  The Court addressed this issue on September 8, 2023 in its order on Mr. Plourde's motion in limine, *see Order on Pl.'s Mot. in Limine to Exclude Defs. as Expert Witnesses* (ECF No. 162), and for the same reasons in that order, the Court rejects Mr. Plourde's denial.
[10]      Mr. Plourde denies DSMF ¶ 5 and requests that the Court strike it, incorporating the reasons behind his denial of and request to strike DSMF ¶4.  PRDSMF ¶ 5.  The Court rejects Mr. Plourde's denial and request to strike for the reasons stated in the previous footnote.
[11]      Mr. Plourde interposes a qualified response to DSMF ¶ 6, incorporating the reasons underlying his objections to DSMF ¶¶ 1 and 5.  PRDSMF ¶ 6.  The Court rejects Mr. Plourde's qualified response for the same reasons set forth in its discussions of PRDSMF ¶¶ 1 and 5.

happened.[12]  DSMF ¶ 7; PRDSMF ¶ 7.  The Defendants contend that Mr. Plourde

brought his vehicle to a stop one and a half minutes after Trooper Cejka activated his

emergency lights.[13]  DSMF ¶ 8; PRDSMF ¶ 8.

After Mr. Plourde brought his vehicle to a stop, Trooper Cejka approached Mr.

Plourde's vehicle.[14]  DSMF ¶ 9; PRDSMF ¶ 9.  The Defendants contend that, after

---

[12]     Mr. Plourde denies DSMF ¶ 7, incorporating the reasons underlying his qualified responses to DSMF ¶¶ 1 and 2.  PRDSMF ¶ 7.  Mr. Plourde further represents that he "has repeatedly informed The Court of the Fact that Trooper Cejka's dash-cam appears to be exceedingly narrow-angle and was therefore unable to capture any footage from the passenger side of the Plaintiff's vehicle (which in and of itself is suspicious) where the plaintiff has alleged gross impropriety has taken place." *Id.*  He also repeats his allegation that "Cejka's dash-cam footage is incomplete." *Id.*  The Court already addressed Mr. Plourde's concerns about Trooper Cejka's dashcam footage in a previous order.  *See Order Affirming Orders on Mot. to Compel* at 5-7 (ECF No. 145) (crediting the Defendants' representation that the dashcam video has not been redacted or altered in any way).  Mr. Plourde's objections fail to present a basis to exclude the video and audio from the summary judgment record because he never disputes the contention that the video and audio accurately reflect what they depict.  Mr. Plourde has the right to present additional evidence, but his objections do not undercut the accuracy of the portions of the video or the audio that the Defendants filed in this case.  Finally, to the extent Mr. Plourde's denial is based on his contention that the dashcam did not capture the entire scene, the Court rejects the denial as beyond the scope of the fact asserted.  DSMF ¶ 7 nowhere contains the assertion that the dashcam captured the entire scene; instead, the statement of material fact merely asserts that Exhibit A accurately reflects what was recorded.  The Court admits DSMF ¶ 7.

[13]     Mr. Plourde denies DSMF ¶ 8.  PRDSMF ¶ 8.  Mr. Plourde's denial is based on his observations that the audio of Trooper Cejka's dashcam video begins roughly one minute after the video itself and that his vehicle comes to a complete stop in the video roughly twenty-seven seconds after the beginning of the audio.  *Id.*  Mr. Plourde also refers to the Magistrate Judge's order that the Defendants file an explanation for the discrepancy between the video and audio recordings, *see Order on Pl.'s Mot. to Compel* at 10 (ECF No. 138), and characterizes the Defendants' explanation as "ambiguous, uncertain vague and noncommittal."  PRDSMF ¶ 8.  Due to the Defendants' unsatisfactory response, Mr. Plourde "asserts that it therefore took 27 seconds to completely stop his car once defendant Cejka's forward facing emergency lights were activated." *Id.*  The Court has already addressed the accuracy of the video and audio, *see Order Affirming Orders on Mot. to Compel* at 5-7 (ECF No. 145), and, in light of Mr. Plourde's contentions, the Court modified DSMF ¶ 8 to reflect that it represents the Defendants' contention.  Furthermore, the only issue in DSMF ¶ 8 is whether Trooper Cejka's dashcam confirms that he stopped Mr. Plourde's vehicle one and a half minutes after he activated his emergency lights.  Here, Mr. Plourde's denial does not go to the accuracy of DSMF ¶ 8.  Mr. Plourde also asserts that he stopped his vehicle within 27 seconds of when Trooper Cejka activated his lights.  But Mr. Plourde's assertion is not grounded on a reference to the record evidence.  The Court rejects Mr. Plourde's denial.

[14]     Mr. Plourde interposes a qualified response to DSMF ¶ 9, reiterating his claim from PRDSMF ¶ 1 that he "has found pictures of Robert Cejka online and . . . finds little resemblance between those pictures and the man shown in [his] cell phone video . . . or defendant Cejka's dash cam video."  PRDSMF ¶ 1; *see* PRDSMF ¶ 9.  The Court concludes that DSMF ¶ 9 is adequately supported by Trooper Cejka's affidavit.  *Cejka Aff.* ¶ 18.  Mr. Plourde points to nothing in the record suggesting that Trooper Cejka was not the individual who stopped him, and the Court declines to accept Mr. Plourde's skepticism of the Defendants' representations as fact.  The Court rejects Mr. Plourde's qualification.

approaching Mr. Plourde's vehicle, Trooper Cejka informed Mr. Plourde that he had been stopped for exceeding the speed limit.[15]   DSMF ¶ 10; PRDSMF ¶ 10.   Trooper Cejka then obtained Mr. Plourde's driver's license and vehicle registration.[16]   DSMF ¶ 11; PRDSMF ¶ 11.   Trooper Cejka returned to his cruiser to conduct a check of Mr. Plourde's license and registration information.[17]   DSMF ¶ 12; PRDSMF ¶ 12.

Trooper Cejka asked Mr. Plourde two times in quick succession if he had any marijuana in the car, and Mr. Plourde replied "no" both times.[18]   PSAMF ¶ 5; DRPSAMF ¶ 5.   Trooper Cejka did not articulate a reasonable suspicion that he believed Mr. Plourde had marijuana in his car.[19]   PSAMF ¶ 6; DRPSAMF ¶ 6.

---

Furthermore, if Trooper Cejka were not the trooper who made the stop, as the Court pointed out earlier, the case against him must be dismissed because Mr. Plourde is suing the wrong man.

[15]   Mr. Plourde denies DSMF ¶ 10.  PRDSMF ¶ 10.  Mr. Plourde represents that he "has denied this allegation multiple times in multiple complaints and pleadings," and he "maintains he was not given a reason as to why he was stopped."  *Id.*  The Court already included Mr. Plourde's assertion that he was not told why he was stopped.  *See* PSAMF ¶ 4; DRPSAMF ¶ 4.  The Court modified DSMF ¶ 10 to reflect that it contains the Defendants' contention.

[16]   Mr. Plourde interposes a qualified response to DSMF ¶ 11, which is again based on his skepticism that Robert Cejka was the person who stopped him.  PRDSMF ¶ 11.  The Court concludes that DSMF ¶ 11 is adequately supported by Trooper Cejka's affidavit, which is admissible evidence at the summary judgment stage.  *See* FED. R. CIV. P. 56(c)(4).  Since there is no basis in the record for Mr. Plourde's skepticism, the Court rejects his qualification.

[17]   Mr. Plourde interposes a qualified response to DSMF ¶ 12, incorporating the reasoning behind his qualification of DSMF ¶ 11 and further asserting that "this fact is unavailable to the Plaintiff (i.e. indiscernible from the evidence)."  PRDSMF ¶ 12.  The Court concludes that DSMF ¶ 12 is supported by Trooper Cejka's affidavit and accordingly rejects Mr. Plourde's qualification.

[18]   The Defendants interpose a qualified response to PSAMF ¶ 5, citing parts of the affidavits of Troopers Cejka and Verhille.  DRPSAMF ¶ 5 (citing *Cejka Aff.* ¶ 28; and DSMF, Attach. 13, *Aff. of Eric Verhille* ¶¶ 10-11, 14-15, 19-20 (*Verhille Aff.*)).  The Court reviewed the cited portions of the affidavits, which only reference Trooper Verhille's canine, Clint, alerting to Mr. Plourde's vehicle and the subsequent interior search of the vehicle.  *Cejka Aff.* ¶ 28; *Verhille Aff.* ¶¶ 10-11, 14-15, 19-20.  As the parts of the record cited by the Defendants do not cast doubt on PSAMF ¶ 5, the Court rejects the Defendants' qualification.

The Defendants also request that the Court strike PSAMF ¶ 5 on the ground that it is immaterial.  The Court disagrees, as PSAMF ¶ 5 is potentially relevant to whether the stop was prolonged, and therefore the Court denies the Defendants' request to strike.

[19]   The Defendants interpose a qualified response to PSAMF ¶ 6, contending that "Trooper Cejka's initial interaction with Plaintiff was limited to informing Plaintiff of the reason for the stop and obtaining Plaintiff's license and registration."  DRPSAMF ¶ 6.  In support, the Defendants cite two paragraphs from Trooper Cejka's affidavit, which fail to contradict PSAMF ¶ 6, and various iterations of Mr. Plourde's complaint, which are inadmissible at the summary judgment stage.  *See Fragoso v.*

Trooper Cejka told Mr. Plourde that another MSP Trooper would be conducting a canine inspection of his vehicle.[20]   PSAMF ¶ 7; DRPSAMF ¶ 7.   Mr. Plourde was instructed by Trooper Cejka to wait in his vehicle while the canine arrived and inspected his vehicle.[21]   PSAMF ¶ 8; DRPSAMF ¶ 8.   Trooper Cejka did not call, radio, or otherwise contact a canine unit to inspect Mr. Plourde's vehicle.[22]   PSAMF ¶ 9; DRPSAMF ¶ 9.

---

*Lopez*, 991 F.2d 878, 887 (1st Cir. 1993) ("We have made it crystal clear that, in opposing summary judgment, a litigant 'may not rest upon mere allegations in, say, an unverified complaint'" (quoting *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991)); *Huard v. Kennebec Cnty.*, No. 1:16-cv-00473-GZS, 2019 U.S. Dist. LEXIS 44834, at *35 n.17 (D. Me. Mar. 19, 2019) ("[T]he Court has disregarded any facts in Plaintiff's Statement of Material Facts that were supported solely by citation to the Amended Complaint").   Because the cited paragraphs of Trooper Cejka's affidavit do not address the substance of PSAMF ¶ 6, the Court rejects the Defendants' qualification.

The Defendants further request that the Court strike PSAMF ¶ 6 on the grounds that it is immaterial and states a conclusion of law.   DRPSAMF ¶ 6.   The Court interprets PSAMF ¶ 6 according to its plain meaning: Trooper Cejka did not inform Mr. Plourde that he had reasonable suspicion to believe there was marijuana in the vehicle.   Contrary to the interpretation advanced by the Defendants, PSAMF ¶ 6 does not say whether reasonable suspicion existed.   Therefore, the Court concludes that PSAMF ¶ 6 does not contain a conclusion of law.   Further, PSAMF ¶ 6 is material to whether the stop was prolonged.   The Court denies the Defendants' request to strike.

[20]   The Defendants deny PSAMF ¶ 7, citing parts of the affidavits of Troopers Cejka and Verhille. DRPSAMF ¶ 7 (citing *Cejka Aff.* ¶¶ 20-22; and *Verhille Aff.* ¶ 13).   The Court reviewed the cited portions of the affidavits and concludes that they do not contradict PSAMF ¶ 7 because they do not state or imply that Trooper Cejka never informed Mr. Plourde that another trooper would be conducting a dog sniff.   Accordingly, the Court rejects the Defendants' denial.

The Defendants also request that the Court strike PSAMF ¶ 7 on the ground that it is immaterial.   *Id.*   The Court disagrees, as PSAMF ¶ 7 is potentially relevant to whether the dog sniff was properly initiated and whether the traffic stop was unduly prolonged.   Therefore, the Court denies the Defendants' request to strike.

[21]   The Defendants deny PSAMF ¶ 8, citing the same parts of the affidavits of Troopers Cejka and Verhille offered in support of their denial of PSAMF ¶ 7.   DRPSAMF ¶ 8 (citing *Cejka Aff.* ¶¶ 20-22; and *Verhille Aff.* ¶ 13).   The Court finds no contradiction between the relevant portions of the affidavits and PSAMF ¶ 8.   Therefore, the Court rejects the Defendants' denial.

The Defendants also request that the Court strike PSAMF ¶ 8 on the ground that it is immaterial.   *Id.*   The Court disagrees for the reasons stated in the previous footnote and accordingly denies the Defendants' request to strike.

[22]   The Defendants interpose a qualified response to PSAMF ¶ 9, relying on paragraph 12 of Trooper Verhille's affidavit, which states, "I was on duty as a Maine State Trooper at the time I arrived at the location on I-295 where Trooper Robert Cejka had pulled over a vehicle, which I observed to be a Saab with Connecticut registration 954-TKB ('Mr. Plourde's vehicle')."   DRPSAMF ¶ 9 (citing *Verhille Aff.* ¶ 12).   Because this paragraph does not explicitly state that Trooper Cejka contacted Trooper Verhille, and the Court is required to view the record in the light most favorable to Mr. Plourde, the Court rejects the Defendants' qualification.

After Trooper Cejka returned to his cruiser, Trooper Verhille, who had separately arrived on scene, informed Mr. Plourde that he would be conducting an exterior canine sniff on Mr. Plourde's vehicle.[23]  DSMF ¶ 13; PRDSMF ¶ 13.  The canine, Clint, with whom Trooper Verhille was working on November 30, 2013, had been trained and certified in narcotics detection by the Maine State Police.[24]  DSMF ¶ 14; PRDSMF ¶ 14.  Trooper Verhille, along with Clint, conducted a canine sniff of the exterior of Mr. Plourde's vehicle.[25]  DSMF ¶ 15; PRDSMF ¶ 15.

An unknown MSP Trooper whom the state of Maine, pursuant to a lawful subpoena, later identified as Trooper Verhille, conducted a canine sniff of Mr. Plourde's vehicle.[26]  PSAMF ¶ 10; DRPSAMF ¶ 10. Trooper Verhille and his canine

---

The Defendants also request that the Court strike PSAMF ¶ 9 on the ground that it is immaterial.  *Id.*  The Court disagrees and concludes that PSAMF ¶ 9 is relevant to whether the traffic stop was prolonged.  Accordingly, the Court denies the Defendants' request to strike.

[23]    DSMF ¶ 13 begins, "Immediately after Trooper Cejka returned to his cruiser . . . ."  Mr. Plourde interposes a qualified response to DSMF ¶ 13, contending that the record does not support the assertion that Trooper Verhille informed Mr. Plourde that the canine would be performing a canine sniff "immediately" after Trooper Cejka returned to his cruiser.  PRDSMF ¶ 13.  The Court struck the word, "immediately," because of its inherent ambiguity.

[24]    Mr. Plourde interposes a qualified response to DSMF ¶ 14 on the ground that there is no "independently verifiable" information that Trooper Verhille was in fact the trooper handling the canine on November 30, 2013.  PRDSMF ¶ 14.  The Court has previously discussed and rejected this contention.

[25]    Mr. Plourde interposes a qualified response to DSMF ¶ 15 on the same basis as in the immediately previous footnote.  PRDSMF ¶ 15.  The Court reaffirms its ruling, rejecting Mr. Plourde's contention.

[26]    PSAMF ¶ 10 reads: "Plaintiff's vehicle was subsequently inspected by an unknown MSP Trooper whom the State of Maine, pursuant to a lawful subpoena, later identified as defendant Verhille."  The Defendants interpose a qualified response to PSAMF ¶ 10, on the ground that the inspection Mr. Plourde references in PSAMF ¶ 10 was actually a dog sniff conducted by Trooper Verhille's canine, Clint.  DRPSAMF ¶ 10 (citing *Verhille Aff.* ¶ 14).  The Court accepts the Defendants' qualification and modified the wording of PSAMF ¶ 10 to be more precise.

The Defendants also request that the Court strike all parts of PSAMF ¶ 10 other than "Plaintiff's vehicle was subsequently inspected by . . . MSP Trooper . . . Verhille" on the ground that the rest of the statement is immaterial.  *Id.*  The Court disagrees.  The fact that Trooper Verhille was unknown to Mr. Plourde is potentially relevant to whether the initiation of the dog sniff was lawful, and the remainder of PSAMF ¶ 10 describes how Mr. Plourde learned of Trooper Verhille's identity.  Accordingly, the Court denies the Defendants' request to strike.

circled Mr. Plourde's car multiple times and, from Mr. Plourde's perspective, the canine appeared to be a happy, uninterested dog and did not exhibit any behavior besides what might be expected from a happy, uninterested dog.[27]  PSAMF ¶ 11; DRPSAMF ¶ 11.  Trooper Verhille, in full view of Mr. Plourde, then put on a tight-fitting black glove, and Mr. Plourde observed Trooper Verhille to rub the passenger-side door handle of Mr. Plourde's vehicle in what Mr. Plourde thought was an unnecessarily suspicious manner.[28]  PSAMF ¶ 12; DRPSAMF ¶ 12.  This action is not captured on video as Trooper Cejka's car was parked in such a way that the passenger side of Mr. Plourde's car does not appear on his dashcam video, and no video of any kind was produced through discovery that shows the events that took place on the passenger side of Mr. Plourde's vehicle.[29]  PSAMF ¶ 12; DRPSAMF ¶ 12.

From Mr. Plourde's perspective, Trooper Verhille, in full view of Mr. Plourde, then brought his canine's nose to the attention of the door handle by grasping either the collar of his canine or the leash close to the collar and directing his canine's nose

[27]     The Defendants interpose a qualified response to PSAMF ¶ 11, stating that Mr. Plourde's cited material failed to establish an adequate foundation for the statement and represented an expert opinion.  DRPSAMF ¶ 11.  The Court rejects the Defendants' qualified response as it is well within ordinary human experience to make observations about dogs; however, the Court amended PSAMF ¶ 11 to confirm that these are Mr. Plourde's observations.

[28]     The Defendants deny PSAMF ¶ 12 on the ground that the cited authority does not support the statement.  DRPSAMF ¶ 12.  The Court rejects the Defendants' denial.  PSAMF ¶ 12 tracks the language in Mr. Plourde's affidavit.  *Compare* PSAMF ¶ 12, *with id.*, Attach. 2, *Aff. of Glen Plourde* ¶ 12 (*Plourde Aff.*).  As the Court previously discussed, Rule 56 of the Federal Rules of Civil Procedure states that a party may use an affidavit to "support or oppose a motion [for summary judgment]" if the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  Mr. Plourde's affidavit based on personal knowledge is just as competent record evidence as the Defendants' affidavits.

[29]     The Defendants deny this part of PSAMF ¶ 12 as well.  Although the factual support for this part of PSAMF ¶ 12 is not in paragraph 12 of Mr. Plourde's affidavit, paragraphs 14 and 15 of Mr. Plourde's affidavit provide sufficient factual support.  *Plourde Aff.* ¶¶ 14-15.  As Mr. Plourde's affidavit is competent evidence for the proposition, the Court includes it in the statement of facts.

to the door handle.[30]  PSAMF ¶ 13; DRPSAMF ¶ 13.  This action is not captured on video as Trooper Cejka's car was parked in such a way that the passenger side of Mr. Plourde's car does not appear on his dashcam video, and no video of any kind was produced through discovery that shows the events that took place on the passenger side of Mr. Plourde's vehicle.[31]  PSAMF ¶ 13; DRPSAMF ¶ 13.

Trooper Cejka's dashcam video is oriented in such a way that it is impossible to view what is happening on the passenger side of Mr. Plourde's vehicle.[32]  PSAMF ¶ 14; DRPSAMF ¶ 14.  The Defendants did not produce a video of any kind, in response to lawful discovery requests, that shows what is happening on the passenger side of Mr. Plourde's vehicle.[33]  PSAMF ¶ 15; DRPSAMF ¶ 15.

Trooper Cejka conducted a check of Mr. Plourde's license and registration.[34]  DSMF ¶ 16; PRDSMF ¶ 16.  Approximately three and a half minutes after pulling over Mr. Plourde's vehicle, Trooper Cejka completed his review of Mr. Plourde's

---

[30]   The Defendants deny PSAMF ¶ 13 on the same ground as their denial of PSAMF ¶ 12, discussed in the two previous footnotes.  DRPSAMF ¶ 13.  The Court disagrees that Mr. Plourde's affidavit is not competent evidence of what he observed and that his observations constitute expert testimony.  The Court rejects the Defendants' denial of PSAMF ¶ 13.

[31]   The Defendants deny this part of PSAMF ¶ 13 as well, providing the same reasons as their denial of similar language in PSAMF ¶ 12.   DRPSAMF ¶ 13.  For the same reasons earlier discussed, the Court does not accept the Defendants' denial.

[32]   The Defendants admit PSAMF ¶ 14 but urge the Court to strike it as immaterial.  DRPSAMF ¶ 14.  The Court rejects the Defendants' contention that this statement is immaterial because the statement explains why there is no corroborative evidence to Mr. Plourde's personal observations about the activity on the passenger side of his vehicle.

[33]   The Defendants issue a qualified response to PSAMF ¶ 15, citing Trooper Cejka's affidavit at paragraphs 15 through 17.  DRPSAMF ¶ 15.  The Court reviewed the cited paragraphs in Trooper Cejka's affidavit, and they do not contradict PSAMF ¶ 15.  The Court does not accept the Defendants' qualified response.

The Defendants also request that the Court strike PSAMF ¶ 15, arguing that it is immaterial. The Court denies the Defendants' request to strike for the reasons stated in the previous footnote.

[34]   Mr. Plourde interposes a qualified response to DSMF ¶ 16 on the ground that the asserted fact is unavailable to him.  PRDSMF ¶ 16.  However, as the Court previously noted, an affidavit is a sanctioned way to present facts to the Court on summary judgment.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to accept Mr. Plourde's qualified response.

license and registration information.[35]  DSMF ¶ 17; PRDSMF ¶ 17.  Trooper Cejka's review of Mr. Plourde's license and registration information took the typical amount of time required to complete that task in the context of a traffic stop for speeding.[36]  DSMF ¶ 18; PRDSMF ¶ 18.

Before Trooper Cejka exited his cruiser after completing his review of Mr. Plourde's license and registration information, Trooper Verhille's canine, Clint, alerted to the passenger side door of Mr. Plourde's vehicle.[37]  DSMF ¶ 19; PRDSMF ¶ 19.  Clint's behavior during the exterior vehicle sniff was consistent with the canine's training to alert to the presence of illegal narcotics.[38]  DSMF ¶ 20; PRDSMF ¶ 20.  Trooper Verhille informed Trooper Cejka of the alert and alert location.[39]  DSMF ¶ 21; PRDSMF ¶ 21.

---

[35]   Mr. Plourde interposes a qualified response to DSMF ¶ 17 on the ground that the asserted fact is unavailable to him.  PRDSMF ¶ 17.  However, as the Court previously noted, an affidavit is a sanctioned way to present facts to the Court on summary judgment.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to accept Mr. Plourde's qualified response.

[36]   Mr. Plourde interposes a qualified response to DSMF ¶ 18 on the ground that the asserted fact is unavailable to him.  PRDSMF ¶ 18.  However, as the Court previously noted, an affidavit is a sanctioned way to present facts to the Court on summary judgment.  *See* FED. R. CIV. P. 56(c)(4).  Furthermore, for the reasons previously stated and ordered, the Court rejects Mr. Plourde's contention that this statement is inadmissible expert testimony.  The Court declines to accept Mr. Plourde's qualified response.

[37]   Mr. Plourde interposes a qualified response to DSMF ¶ 19 on the ground that the asserted fact is unavailable to him.  PRDSMF ¶ 19.  However, as the Court previously noted, an affidavit is a sanctioned way to present facts to the Court on summary judgment.  *See* FED. R. CIV. P. 56(c)(4).  Furthermore, for the reasons previously stated and ordered, the Court rejects Mr. Plourde's contention that this statement is inadmissible expert testimony.  Finally, Mr. Plourde's argument based on his observation of Trooper Verhille directing the nose of his canine to the door handle is beyond the scope of the fact asserted.  The Court declines to accept Mr. Plourde's qualified response.

[38]   Mr. Plourde interposes a qualified response to DSMF ¶ 20 on the ground that the asserted fact is unavailable to him.  PRDSMF ¶ 20.  However, as the Court previously noted, an affidavit is a sanctioned way to present facts to the Court on summary judgment.  *See* FED. R. CIV. P. 56(c)(4).  Furthermore, for the reasons previously stated and ordered, the Court rejects Mr. Plourde's contention that this statement is inadmissible expert testimony.  Finally, insofar as Mr. Plourde's denial rests on his own observations, they are beyond the scope of the fact asserted.  The Court declines to accept Mr. Plourde's qualified response.

[39]   Mr. Plourde denies DSMF ¶ 21 on the ground that in the dashcam video, Trooper Verhille can be heard to say to Trooper Cejka that the canine "seemed pretty interested in the [Plaintiff's] car from

Trooper Cejka informed Mr. Plourde that the canine had detected narcotics in his car and ordered Mr. Plourde out of the vehicle.[40]  PSAMF ¶ 16; DRPSAMF ¶ 16. Mr. Plourde checked with Trooper Cejka that this was an official order and not a "voluntary request" as Mr. Plourde would have refused to submit to a voluntary search.[41]  PSAMF ¶ 17; DRPSAMF ¶ 17.  Trooper Cejka informed Mr. Plourde that it was an order, and Mr. Plourde therefore exited his vehicle.[42]  PSAMF ¶ 18; DRPSAMF ¶ 18.  Trooper Cejka immediately searched Mr. Plourde's person and found Mr. Plourde's prescription anti-anxiety medication, which he checked.[43] PSAMF ¶ 19; DRPSAMF ¶ 19.  Trooper Cejka also found Mr. Plourde's utility knife, which was either on his person or in the center console, checked it, and asked if there was blood on the blade, to which Mr. Plourde responded in the negative.[44]  PSAMF ¶

---

the get-go." PRDSMF ¶ 21.  The Court declines to accept Mr. Plourde's denial and qualified response because the Defendants' statement is supported by competent evidence, *see Verhille Aff.* ¶ 16, and the fact that the conversation was not captured on the dashcam does not mean it did not take place, especially because Trooper Cejka's dashcam video contains quite a bit of background noise.

[40]     Although the Defendants admit PSAMF ¶ 16, they ask the Court to strike it on the ground that it is not properly an additional fact.  DRPSAMF ¶ 16.  The Court rejects the Defendants' request to strike.

[41]     The Defendants interpose a qualified response to PSAMF ¶ 17, citing Trooper Cejka's affidavit. DRPSAMF ¶ 17 (citing *Cejka Aff.* ¶ 26).  The Court reviewed paragraph 26 of Trooper Cejka's affidavit and concludes that it does not provide a basis to exclude PSAMF ¶ 17.  The Court declines to accept the Defendants' qualified response.

[42]     The Defendants interpose a qualified response to PSAMF ¶ 18, citing Trooper Cejka's affidavit. DRPSAMF ¶ 18 (citing *Cejka Aff.* ¶ 26).  The Court reviewed paragraph 26 of Trooper Cejka's affidavit and concludes that it does not provide a basis to exclude PSAMF ¶ 18.  The Court declines to accept the Defendants' qualified response.

[43]     The Defendants admit PSAMF ¶ 19 but ask the Court to strike it as immaterial.  DRPSAMF ¶ 19.  The Court declines to strike PSAMF ¶ 19 because what the Troopers found during their search is material to the issues before the Court.

[44]     The Defendants interpose a qualified response to PSAMF ¶ 20, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 20 as immaterial.  DRPSAMF ¶ 20. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 20.  The Court declines to strike PSAMF ¶ 20 because what the Troopers found when they searched Mr. Plourde's motor vehicle is material to the issues before the Court.

20; DRPSAMF ¶ 20.   Trooper Cejka then instructed Mr. Plourde to stand approximately ten feet in front of his vehicle while the Defendants searched it.[45] PSAMF ¶ 21; DRPSAMF ¶ 21.

Within thirty seconds of exiting his cruiser, Trooper Cejka instructed Mr. Plourde to exit his vehicle to allow Trooper Verhille and Clint to conduct an interior search.[46]  DSMF ¶ 22; PRDSMF ¶ 22.  Trooper Verhille and Clint then conducted an interior search of Mr. Plourde's vehicle.[47]  DSMF ¶ 23; PRDSMF ¶ 23.  The interior search of Mr. Plourde's vehicle did not locate any illegal narcotics.[48]  DSMF ¶ 24; PRDSMF ¶ 24.

Approximately three and a half minutes after the search of his vehicle commenced, Mr. Plourde began filming the search with his smartphone.[49]  PSAMF ¶

---

[45]   The Defendants interpose a qualified response to PSAMF ¶ 21, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 21 as immaterial.  DRPSAMF ¶ 21. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 20 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  The Court declines to strike PSAMF ¶ 21 because Trooper Cejka's instructions to Mr. Plourde prior to the search of his vehicle are relevant to the issues in this case.

[46]   Mr. Plourde qualifies his response to DSMF ¶ 22 on the ground that he is not sure that Troopers Cejka and Verhille were actually the Troopers involved in his November 30, 2013 stop. PRDSMF ¶ 22.  The Court previously addressed this issue and declined to accept Mr. Plourde's qualified responses.  Mr. Plourde also denies DSMF ¶ 22 on the ground that it is "unclear from the evidence when exactly defendant Cejka exited his MSP vehicle."  PRDSMF ¶ 22.  The Court declines to accept Mr. Plourde's denial because DSMF ¶ 22 does not assert when Trooper Cejka exited his cruiser; it only asserts that he instructed Mr. Plourde to exit his vehicle within thirty seconds of when Trooper Cejka exited his cruiser, whenever that was.

[47]   Mr. Plourde qualifies his response to DSMF ¶ 23 on the ground that he is not sure that Troopers Cejka and Verhille were actually the Troopers involved in his November 30, 2013 stop. PRDSMF ¶ 23.  The Court previously addressed this issue and declined to accept Mr. Plourde's qualified responses.

[48]   Mr. Plourde qualifies his response to DSMF ¶ 24 on the ground that he is not sure that Troopers Cejka and Verhille were actually the Troopers involved in his November 30, 2013 stop. PRDSMF ¶ 24.  The Court previously addressed this issue and declined to accept Mr. Plourde's qualified responses.

[49]   The Defendants interpose a qualified response to PSAMF ¶ 22, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 22 as immaterial.  DRPSAMF ¶ 22. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 22 and Mr. Plourde's affidavit is proper

22; DRPSAMF ¶ 22.  Trooper Cejka immediately noticed Mr. Plourde filming and ducked down behind the open passenger door of Mr. Plourde's vehicle and held a quick conversation with Trooper Verhille.[50]  PSAMF ¶ 23; DRPSAMF ¶ 23. Less than twenty seconds after Mr. Plourde began filming, he was approached by Trooper Cejka who was holding a shrink-wrapped piece of pizza in his hand.[51]  PSAMF ¶ 24; DRPSAMF ¶ 24.  Mr. Plourde was told by Trooper Cejka that the canine had probably mistaken the piece of pizza for narcotics because it was "old" and "nasty as nasty."[52] PSAMF ¶ 25; DRPSAMF ¶ 25.  Mr. Plourde was then engaged by Trooper Cejka in an unwanted and unnecessary conversation concerning the pizza, his hobbies, and his employment.[53]  PSAMF ¶ 26; DRPSAMF ¶ 26.

---

record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 22 because when during the stop Mr. Plourde began videotaping the encounter is relevant to the issues in this case.

[50]      The Defendants interpose a qualified response to PSAMF ¶ 23, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 23 as immaterial.  DRPSAMF ¶ 23. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 23 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 23 because how the Troopers reacted when they realized that Mr. Plourde was filming them is material to the issues in this case.

[51]      The Defendants interpose a qualified response to PSAMF ¶ 24, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 24 as immaterial.  DRPSAMF ¶ 24. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 24 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 24 because the Troopers' response to the piece of pizza is relevant to the issues in this case.

[52]      The Defendants interpose a qualified response to PSAMF ¶ 25, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 25 as immaterial.  DRPSAMF ¶ 25. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 25 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 25 because the Troopers' response to the piece of pizza is relevant to the issues in this case.

[53]      The Defendants interpose a qualified response to PSAMF ¶ 26, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 26 as immaterial.  DRPSAMF ¶ 26. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 26 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF

At times during their conversation, Trooper Cejka was holding the piece of pizza in an unnatural manner, dangling it from a corner like an illicit handgun seen in popular culture, instead of supporting it from the bottom as one would normally do with a plated piece of pizza.[54]  PSAMF ¶ 27; DRPSAMF ¶ 27.  At all times during Mr. Plourde's travel from Maine to Connecticut, his handguns were unloaded, rendered disabled, and locked and stored away in the trunk of his vehicle in a manner consistent with Mr. Plourde's understanding of the requirements of state and federal laws.[55]  PSAMF ¶ 28; DRPSAMF ¶ 28.  While Trooper Cejka was explaining the "pizza theory" to Mr. Plourde and engaging him in unnecessary conversation concerning his hobbies and employment, Trooper Verhille continued to search Mr. Plourde's vehicle as is evident from Mr. Plourde's video footage.[56]  PSAMF ¶ 29; DRPSAMF ¶ 29.  The Defendants can be heard discussing the piece of pizza as the

---

¶ 26 because the Troopers' course of interactions with Mr. Plourde during the traffic stop is relevant to the issues in this case.

[54]     The Defendants interpose a qualified response to PSAMF ¶ 27, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 27 as immaterial.  DRPSAMF ¶ 27.  The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 27 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 27 because the Troopers' course of interactions with Mr. Plourde during the traffic stop is relevant to the issues in this case.

[55]     The Defendants interpose a qualified response to PSAMF ¶ 28 on the ground that, as phrased, it asserts a legal conclusion, not a fact, and the Defendants ask the Court to strike the statement on the ground that it is immaterial.  DRPSAMF ¶ 28.  The Court altered PSAMF ¶ 28 to clarify that it reflects Mr. Plourde's belief, not a statement of law.  The Court rejects the Defendants' request to strike because PSAMF ¶ 28 negates any implication by the Defendants that Mr. Plourde's possession of firearms justified the search.

[56]     The Defendants interpose a qualified response to PSAMF ¶ 29, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 29 as immaterial.  DRPSAMF ¶ 29.  The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 29 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 29 because the Troopers' course of interactions with Mr. Plourde during the traffic stop is relevant to the issues in this case and a factfinder could find that Trooper Cejka's conversation with Mr. Plourde was intended to distract him from Trooper Verhille's continued search of his vehicle.

impetus for the search in Trooper Cejka's dashcam video and no mention is made of a black briefcase.[57]  PSAMF ¶ 30; DRPSAMF ¶ 30. Trooper Verhille's canine incident report mentions a black briefcase although there is no mention of a black briefcase in Trooper Cejka's dashcam video.[58]  PSAMF ¶ 31; DRPSAMF ¶ 31.[59]

Mr. Plourde was then slowly walked back to his car by Trooper Cejka, and he was again engaged in unwanted and unnecessary banter for a period of approximately four minutes, which is nearly as long as the period it took to execute the search of Mr. Plourde's vehicle.[60]  PSAMF ¶ 33; DRPSAMF ¶ 33.  The Troopers

---

[57]    The Defendants interpose a qualified response to PSAMF ¶ 30, contending that the video itself is the best evidence of what took place, and they also ask the Court to strike PSAMF ¶ 30 as immaterial.  DRPSAMF ¶ 30.  The Court declines to accept the Defendants' qualified response because a factfinder could determine that Mr. Plourde's personal observations are more probative than the contents of the video, and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 30 because the Troopers' course of interactions with each other during the traffic stop is relevant to the issues in this case and a factfinder could find that the failure to mention a black briefcase indicates that the reason for the stop and the search was not related to the black briefcase.

[58]    The Defendants interpose a qualified response to PSAMF ¶ 31, citing Trooper Verhille's affidavit at paragraph 5, claiming that Mr. Plourde's citation does not support the statement, and asking the Court to strike the statement as immaterial.  DRPSAMF ¶ 31.  The Court declines to accept the Defendants' qualified response because the contents of paragraph 5 of Trooper Verhille's affidavit do not necessarily contradict the contents of PSAMF ¶ 31, and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  Having reviewed paragraph 31 of Mr. Plourde's affidavit, the Court rejects the Defendants' claim that Mr. Plourde failed to provide record support for PSAMF ¶ 31.  The Court declines to strike PSAMF ¶ 31 because a factfinder could find that the failure to mention a black briefcase during the stop but mentioning it in the Trooper's report confirms that the Troopers were using a retroactive rationale to justify the stop and search.

[59]    PSAMF ¶ 32 states that "MSP narcotics dogs are trained specifically to alert to narcotics, not food items such as pizza."  The Defendants deny this assertion on the grounds that the cited authority does not support it and that Mr. Plourde's opinion about canine training is an expert opinion.  DRPSAMF ¶ 32.  The Court agrees with the Defendants.  The sole support for this statement is Mr. Plourde's own affidavit.  *See Plourde Aff.* ¶ 32.  As the statement assumes personal knowledge of canine training and there is no indication that Mr. Plourde is so trained, the Court declines to accept the assertion.

[60]    The Defendants interpose a qualified response to PSAMF ¶ 33, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 33 as immaterial.  DRPSAMF ¶ 33.  The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 33 and Mr. Plourde's affidavit is proper record evidence for the asserted fact.  *See* FED. R. CIV. P. 56(c)(4).  The Court declines to strike PSAMF ¶ 33 because the Troopers' course of interactions with Mr. Plourde during the traffic stop is relevant

offered to remove the pizza from Mr. Plourde's possession for the purpose of "training canine units," and Mr. Plourde, who wanted the encounter to end as quickly as possible, did not object.[61]   PSAMF ¶ 34; DRPSAMF ¶ 34.   Less than nine minutes after asking Mr. Plourde to exit his vehicle to allow Trooper Verhille to conduct the interior search, Trooper Cejka gave Mr. Plourde a verbal warning for exceeding the speed limit.[62]   DSMF ¶ 25; PRDSMF ¶ 25.   Less than nine minutes after asking Mr. Plourde to exit his vehicle to allow Trooper Verhille to conduct the interior search, Trooper Cejka informed Mr. Plourde that he was free to leave.[63]   DSMF ¶ 26; PRDSMF ¶ 26.   Mr. Plourde was then allowed to leave and was given no ticket, written warning, or other evidence of the encounter.[64]   PSAMF ¶ 35; DRPSAMF ¶ 35.

---

to the issues in this case and a factfinder could find that Trooper Cejka's conversation with Mr. Plourde was intended to distract him from Trooper Verhille's search of his vehicle.

[61]   The Defendants interpose a qualified response to PSAMF ¶ 34, citing Trooper Cejka's affidavit at paragraph 17, and they also ask the Court to strike PSAMF ¶ 34 as immaterial.   DRPSAMF ¶ 34. The Court declines to accept the Defendants' qualified response because paragraph 17 of Trooper Cejka's affidavit does not necessarily contradict PSAMF ¶ 34 and Mr. Plourde's affidavit is proper record evidence for the asserted fact. *See* FED. R. CIV. P. 56(c)(4). The Court declines to strike PSAMF ¶ 34 because the Troopers' course of interactions with Mr. Plourde during the traffic stop is relevant to the issues in this case and a factfinder could find that the Troopers' request to retain the pizza for canine training suggests that the canine alerted on the pizza and thereby precipitated the motor vehicle search.

[62]   Mr. Plourde denies DSMF ¶ 25 on multiple bases.   First, Mr. Plourde raises again whether Troopers Cejka and Verhille were actually the Troopers who participated in the November 30, 2013 stop.   PRDSMF ¶ 25. For the reasons previously explained, the Court overrules that objection. Second, Mr. Plourde confirms that Trooper Cejka told him he was going to give him a verbal warning for speeding, but he claims that this was the first time Trooper Cejka mentioned speeding. *Id.* The Court declines to allow a denial on this basis because DSMF ¶ 25 does not say or imply that Trooper Cejka had previously told Mr. Plourde why he had been stopped. Finally, Mr. Plourde says he was never given any evidence that he was speeding, but the statement does not say or imply that he was given evidence of speeding. The Court declines to accept Mr. Plourde's denial.

[63]   Although Mr. Plourde interposes a qualified response to DSMF ¶ 26, the Court does not read his response as presenting a basis for interposing a qualified response.   PRDSMF ¶ 26.   It refuses to accept the qualification.

[64]   Although the Defendants interpose a qualified response to PSAMF ¶ 35, the Court does not read their response as presenting a basis for interposing a qualified response.   DRPSAMF ¶ 35.   The Court further denies the Defendants' request to strike this statement as immaterial.

On November 30, 2013, following his usual routine and practice, Trooper Cejka completed a Warning Card, including Mr. Plourde's registration information, indicating that Trooper Cejka had stopped Mr. Plourde's vehicle for exceeding the posted speed limit.[65]  DSMF ¶ 27; PRDSMF ¶ 27.  At the time of the November 30, 2013 traffic stop at issue in this litigation, although Mr. Plourde contends otherwise, both Trooper Cejka and Trooper Verhille believed that their actions in connection with the traffic stop did not violate Mr. Plourde's rights, including his rights pursuant to the Fourth Amendment of the United States Constitution.[66]  DSMF ¶ 28; PRDSMF ¶ 28.[67]

Mr. Plourde believes this highly suspicious stop and search is perhaps not so suspicious when one considers that he had been extensively target practicing with his handguns at his parents' house in Newburgh, Maine and has been told by at least two credible sources that at least two of his three direct neighbors are

---

[65]   Mr. Plourde denies DSMF ¶ 27 on the ground that he never received a warning card from either Trooper.  PRDSMF ¶ 27.  But DSMF ¶ 27 states only that Trooper Cejka wrote one up, not that he handed it to Mr. Plourde.  The Court declines to accept Mr. Plourde's denial.

[66]   Mr. Plourde denies DSMF ¶ 28 on the ground that he does not believe either Trooper could have believed they were complying with the law when they made the Plourde stop.  PRDSMF ¶ 28.  The Court altered DSMF ¶ 28 to clarify that Mr. Plourde does not believe that the Troopers believed their actions were constitutional.

[67]   PSAMF ¶ 36 states:

> Unscrupulous gun owners or criminals are known to ignore State and Federal Laws and travel with their handgun(s) on their person or not secured according to State and Federal Laws.

The Defendants object on various grounds.  DRPSAMF ¶ 36.  The Court agrees that Mr. Plourde does not have the personal knowledge to make such a statement, and it does not appear relevant to the issues before the Court.  Therefore, the Court will not consider it.

involved/employed with either state or federal law enforcement.[68]   PSAMF ¶ 37; DRPSAMF ¶ 37.

## III.   THE PARTIES' POSITIONS

### A.   The Defendants' Motion for Summary Judgment

#### 1.   Reasonable Suspicion for the Stop

The Defendants turn first to the legality of the motor vehicle stop.[69]  They say that as Trooper Cejka stopped Mr. Plourde based on a reasonable suspicion that Mr. Plourde had violated the traffic laws of the state of Maine, the stop was lawful.  *Defs.' Mot.* at 5-7.  The Defendants stress that Trooper Cejka stopped Mr. Plourde's vehicle because, "consistent with his training, experience, and usual practice, Trooper Cejka received an alert from speed measuring equipment in his cruiser and observed that the alert identified Plaintiff's vehicle as exceeding the posted speed limit of 65 miles per hour."  *Id.* at 6.  They then point out that exceeding the posted speed is an infraction in Maine.  *Id.*;  *see also* 29-A M.R.S. § 2074(3-A) ("A person who operates a motor vehicle on the Maine Turnpike or the Interstate Highway System at a speed that exceeds the posted speed by less than 30 miles per hour commits a traffic

---

[68]    Although the Defendants object to this statement as immaterial, Mr. Plourde's explanation for why he believes he was stopped is admissible.  DRPSAMF ¶ 37.  The Court does not consider Mr. Plourde's reference to what "two credible sources" told him about his neighbors for the truth of the statements, but only to explain Mr. Plourde's contentions about why he thinks Trooper Cejka stopped him.  The Court overrules the Defendants' objections.

[69]    The Defendants acknowledge that Mr. Plourde has brought claims pursuant to 5 M.R.S. § 4682 based on asserted violations of the United States and Maine Constitutions.  *Defs.' Mot.* at 5 n.2.  Quoting *State v. Martin*, 120 A.3d 113 (Me. 2015), the Defendants note that "Article I, section 5 of the Maine Constitution provides protections that are coextensive with the Fourth Amendment" to the United States Constitution.  *Id.*  Without separate discussion, they argue that as they are entitled to judgment on the claims under 42 U.S.C. § 1983, they are also entitled to judgment on the 5 M.R.S. § 4682 claims.

infraction punishable by a fine of not less than $50"). In short, the Defendants argue, "[b]ecause Trooper Cejka had 'a particularized and objective basis for suspecting' the Plaintiff of violating Maine law, his stop of Plaintiff's vehicle on November 30, 2013 did not violate Plaintiff's Fourth Amendment rights." *Id.* at 7 (internal citation omitted) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

### 2.     Whether the Canine Sniff Prolonged the Stop

The Defendants then discuss the canine sniff. They argue that "[a]n exterior canine sniff of a vehicle is not a 'search.'" *Id.* (citing *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993)). According to the Defendants, an exterior canine sniff attendant to a lawful traffic stop "would only violate a motorist's Fourth Amendment rights if it unreasonably prolonged the time during which a motorist would typically be detained for completion of the tasks attendant to the initial traffic stop." *Id.* (citing *Muehler v. Mena*, 544 U.S. 93, 101 (2005)). Here, by the Defendants' reckoning, only three minutes lapsed between the time Mr. Plourde's vehicle came to a stop and the alert of Trooper Verhille's narcotics detection canine. *Id.* at 9. During this time, the Defendants continue, Trooper Cejka was performing such tasks as checking Mr. Plourde's license and registration. *Id.* The Defendants say that "[b]y the time Trooper Cejka exited his cruiser, Trooper Verhille informed Trooper Cejka that the canine had alerted to the presence of illegal narcotics." *Id.* Accordingly, the Defendants contend the stop was not prolonged by the canine sniff and therefore Mr. Plourde is not entitled to claim a violation of his Fourth Amendment rights from the sniff. *Id.*

### 3.     Probable Cause for the Interior Search

The Defendants next argue that once Trooper Verhille's canine alerted during the exterior sniff of the Plourde vehicle, the Troopers had probable cause to search the interior of the motor vehicle.  *Id.* at 9-10 (citing *United States v. Brown*, 500 F.3d 48, 57 (1st Cir. 2007)).

### 4.     Qualified Immunity

Finally, the Defendants assert that they are entitled to qualified immunity for each of Mr. Plourde's claims: the traffic stop, the canine sniff of the exterior of Mr. Plourde's vehicle, and the interior search of his vehicle.  *Id.* at 10-18.

## B.     Glen Plourde's Opposition

In his opposition, Mr. Plourde emphasizes that he was "exercising all due caution" while driving because he was traveling with his handguns, and that he was "consciously observing the speed limit and consciously not violating any traffic laws." *Pl.'s Opp'n* at 2.  Mr. Plourde says that Trooper Cejka did not "articulate any reason for having stopped the plaintiff" and he asserts that "no evidence exists that defendant Cejka ever had a reasonable suspicion that the plaintiff ever broke any traffic law." *Id.* at 3.

Mr. Plourde asserts that the sudden appearance of Trooper Verhille was without any communication by Trooper Cejka, and Mr. Plourde wonders whether the canine sniff was preplanned, making the traffic stop a ruse for inspecting his vehicle. *Id.* at 3.  Mr. Plourde is skeptical about the circumstances of the canine sniff and the way Trooper Verhille carried it out.  *Id.* at 3-4.

22

After being told the canine alerted to something inside the Plourde vehicle, Mr. Plourde contends he was ordered out of his vehicle and told to stand about ten feet from it. *Id.* at 4-5. Mr. Plourde then began filming the Troopers with his own cellphone. *Id.* at 5. During the Troopers' search of Mr. Plourde's vehicle, they found an old piece of pizza, after which Trooper Cejka approached Mr. Plourde and engaged in conversation about the pizza, his hobbies, and his employment while Trooper Verhille continued to search his vehicle. *Id.* at 5-6. Mr. Plourde considers Trooper Cejka's conversation to have been a way to distract Mr. Plourde from Trooper Verhille's vehicle search and to prolong the search. *Id.* at 6. Mr. Plourde says he was then allowed to leave without being given a ticket or written warning, and thus without any documentary evidence of the encounter, which Mr. Plourde views suspiciously. *Id.*

Mr. Plourde cites *Illinois v. Caballes*, 543 U.S. 405 (2005), for the proposition that a seizure justified by the issuance of a warning ticket can become unlawful if prolonged beyond the time necessary to accomplish that mission. *Pl.'s Opp'n* at 7. However, in *Caballes*, Mr. Plourde points out that the Supreme Court described the traffic stop as "concededly lawful." *Id.* Mr. Plourde cites other caselaw, including *United States v. Ramdihall*, 859 F.3d 80, 90 (1st Cir. 2017), for the same proposition. Mr. Plourde then turns to each of the issues highlighted by the Defendants and argues that there are unresolved factual issues for each. *Pl.'s Opp'n* at 8-11.

23

### C.    The Defendants' Reply

In their reply, the Defendants initially discuss whether Mr. Plourde has generated a genuine issue of material fact as to whether Trooper Cejka had a reasonable suspicion that he was speeding, thereby justifying the traffic stop. *Defs.' Reply* at 1-2. They point to the alert Trooper Cejka received from his properly calibrated speed measuring equipment that Mr. Plourde's vehicle was exceeding the posted speed limit. *Id.* at 2. They note that although Mr. Plourde has objected to evidence from Trooper Cejka about calibration as improper expert testimony, Trooper Cejka's evidence should be accepted for purposes of the dispositive motion. *Id.* at 2. Accordingly, this conclusion leaves, in the Defendants' view, no genuine issue of material fact as to whether Trooper Cejka's stop of Mr. Plourde's vehicle was supported by reasonable suspicion. *Id.*

The Defendants next argue in turn that because the stop was justified, the canine sniff was proper, and once the canine alerted, the interior search was similarly proper. *Id.* at 2-4. Finally, the Defendants reiterate their argument that they are protected by qualified immunity. *Id.* at 4-7.

## IV.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain*

*Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## V. DISCUSSION

### A. Genuine Issues of Material Fact in Challenges to Traffic Stops

At the outset, the Court notes that the parties appear to be talking past each other regarding the legality of the traffic stop. Mr. Plourde maintains that he was not speeding; the Troopers argue that it was reasonable for Trooper Cejka to believe that Mr. Plourde was speeding. In a vacuum, it would make sense that if Mr. Plourde was speeding, the stop was legal; yet, if Mr. Plourde was not speeding, the stop was without reasonable suspicion, meaning that Mr. Plourde's case may proceed. Under this view, whether Mr. Plourde was speeding is a question of fact, not law, and it would seem the dispute between Mr. Plourde and the Defendants raises a genuine issue of material fact that must be resolved by a jury.

Such a conclusion would be buttressed by the fact that in traffic courts throughout the country, whether a driver was speeding is resolved by trial. Drivers ticketed for speeding protest to judges that they were operating their vehicles strictly within the posted speed, and law enforcement officers testify about the calibration of their speed detection devices, their protocols for identifying speeders and tracking them down, and the excess speed at which the drivers were operating. In light of this paradigm, the obligation to view disputed material facts in the light most favorable to the nonmovant would seem to compel the conclusion that Mr. Plourde has raised a material fact for factfinder resolution.

Furthermore, in analogous cases, some courts have denied summary judgment on the ground that a conflict about why an officer made a traffic stop generates a genuine issue of material fact. *Foster v. Mata*, No. CV 09-2154-GAF, 2010 U.S. Dist. LEXIS 91168, at *2-3, *8-11 (C.D. Cal. July 23, 2010) (determining that summary

26

judgment was improper because the defendants gave conflicting reasons for the traffic stop, and the only lawful basis for a traffic stop articulated by the defendants was that the plaintiff was not wearing a seatbelt, which the plaintiff disputed); *Ikezi v. City of New York*, No. 14-CV-5905, 2017 U.S. Dist. LEXIS 50742, at *3-4, *14-16 (E.D.N.Y. Mar. 31, 2017) (denying summary judgment because the parties gave conflicting accounts of whether the plaintiff failed to maintain his lane and changed lanes without signaling); *Crockett v. City of Gresham*, No. 3:18-cv-00800-HZ, 2019 U.S. Dist. LEXIS 76730, at *11-14 (D. Or. May 3, 2019) (rejecting the defendants' motion for summary judgment because although the defendants claimed the plaintiff's vehicle did not have functional taillights and license plates, the plaintiff testified that his taillights were on, and photographs showed a visible trip permit in the rear window of the vehicle, an acceptable substitute for license plates).

## B. Reasonable Suspicion that Glen Plourde Violated the Traffic Laws

However commonsensical on its face, this traffic court view does not prevail in the context of a § 1983 civil action filed in federal court against law enforcement officers. This is because the legal standard for resolving a lawsuit filed against a law enforcement officer for an alleged Fourth Amendment violation is not whether the plaintiff was actually speeding, but whether a reasonable officer would have believed the plaintiff was speeding.

In *Navarette v. California*, 572 U.S. 393 (2014),[70] the United States Supreme Court discussed the standard applicable to the legality of a traffic stop. The Court reaffirmed that the Fourth Amendment "permits brief investigative stops," including "traffic stops," when "a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* at 396-97 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see also United States v. Chhien*, 266 F.3d 1, 5-6 (1st Cir. 2001) (noting that a traffic stop "must be supported by a reasonable and articulable suspicion of criminal activity"). The *Navarette* Court also wrote that "[t]he 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette*, 572 U.S. at 397 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "The standard takes into account 'the totality of the circumstances—the whole picture.'" *Id.* (quoting *Cortez*, 499 U.S. at 417); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" (quoting *Cortez*, 449 U.S. at 417-18)).

---

[70]     *Navarette*, and many other cases cited in this order, were decided after the events underlying this case took place. The Court cites these cases as a response to the parties, who cited post-November 30, 2013 authority, and as recent illustrations of longstanding principles, which were in effect at the time of the November 30, 2013 traffic stop. As such, the Court has included older authority, or citing or quoting parentheticals, to confirm that the law explained herein was in effect at the time of Mr. Plourde's traffic stop.

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette*, 572 U.S. at 397 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also United States v. Ruidiaz*, 529 F.3d 25, 29 (1st Cir. 2008) ("While no perfectly precise definition of reasonable suspicion exists, it is well established that, in terms of the continuum of knowledge, reasonable suspicion requires more than a mere hunch but less than probable cause"). "In gauging whether the circumstances generate a reasonable suspicion, [the First Circuit applies] 'an objective standard, rather than assessing the subjective intent of an individual officer.'" *United States v. Fagan*, 71 F.4th 12, 18 (1st Cir. 2023) (quoting *United States v. Tiru-Plaza*, 766 F.3d 111, 116 (1st Cir. 2014)); *see also Ruidiaz*, 529 F.3d at 29 ("Reasonableness in this context is a construct that must be judged according to objective criteria; it is not dependent on an individual officer's subjective motives"). In other words, reasonable suspicion turns on whether "a hypothetical reasonable officer considering what [the officer] observed would reasonably suspect that [the driver] had operated his vehicle unsafely in violation of Maine's traffic laws." *Fagan*, 71 F.4th at 18.

Here, Trooper Cejka stopped Mr. Plourde's motor vehicle because he received an alert from speed monitoring equipment in his cruiser and observed that the alert identified Mr. Plourde's vehicle as exceeding the posted speed limit of 65 miles per hour by at least 5 miles per hour. DSMF ¶ 5; PRDSMF ¶ 5. Trooper Cejka's monitoring of traffic and his identification of Mr. Plourde's vehicle as speeding was

"[c]onsistent with his training, experience, and usual practice." DSMF ¶ 5; PRDSMF ¶ 5. Further, Trooper Cejka ensured the calibration of his speed measuring equipment on November 30, 2013 before using that equipment to monitor traffic. DSMF ¶ 4; PRDSMF ¶ 4.

Based on the alert, Trooper Cejka reasonably suspected that Mr. Plourde had violated 29-A M.R.S. § 2074(3-A), which makes exceeding the posted speed limit a traffic infraction. *See id.* ("A person who operates a motor vehicle on the Maine Turnpike or the Interstate Highway System at a speed that exceeds the posted speed by less than 30 miles per hour commits a traffic infraction punishable by a fine of not less than $50"). Maine law provides that alerts from speed measuring equipment based on laser and radar technology provide prima facie evidence of the speed of a vehicle in a traffic infraction proceeding. *See* 29-A M.R.S. § 2075(4) ("The results of a measurement of the following instruments must be accepted as prima facie evidence of the speed of a motor vehicle in a . . . traffic infraction proceeding: A. Radar; B. An electronic device that measures speed by radiomicrowaves, laser or otherwise. . . ."); *State v. Arnheiter*, 598 A.2d 1183, 1186 (Me. 1991) (upholding the constitutionality of the statute's rebuttable presumption).

Based on the totality of the circumstances, the Court concludes that "a hypothetical reasonable officer" who observed that his cruiser's speed monitoring equipment had alerted him to a vehicle exceeding the posted speed would "reasonably suspect" that the driver was violating Maine traffic laws and would have the legal authority to stop the vehicle. *See United States v. Greene*, No. 96-2124, 1997 U.S.

30

App. LEXIS 28635, at *6 (1st Cir. Oct. 14, 1997) ("It is clear that the stop of the speeding cab was valid, and the appellant does not seriously contend otherwise"); *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011) ("An officer can stop a car if he sees a driver commit a traffic offense . . . ."); *see also United States v. Williams*, No. 2:18-cr-00013-JDL, 2020 U.S. Dist. LEXIS 91549, at *11-12 (D. Me. May 26, 2020) (concluding that a trooper was justified in making a traffic stop when the trooper observed the vehicle speeding and following too closely).

### C.    The Dog Sniff Met Constitutional Standards

In *Illinois v. Caballes*, 543 U.S. 405 (2005), the United States Supreme Court wrote that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."  *Id.* at 410; *United States v. Fortson*, 688 F. Supp. 2d 12, 14 n.2 (D. Me. 2010) ("[T]he Supreme Court has indicated that 'dog sniffs' during otherwise lawful traffic stops do not violate the Fourth Amendment"); *accord United States v. Martin*, No. 2:18-cr-00124-JDL, 2019 U.S. Dist. LEXIS 94863, at *9 (D. Me. June 6, 2019).  Once the legality of the traffic stop is confirmed, Mr. Plourde's only constitutional attack against a dog sniff is that it caused the stop to be "prolonged beyond the time reasonably required to complete" the mission of investigating a traffic infraction. *Caballes*, 543 U.S. at 408.  If the dog sniff "did not prolong the stop, no additional reasonable suspicion was necessary." *Martin*, 2019 U.S. Dist. LEXIS 94863, at *9-10.

The dashcam video establishes that the dog sniff did not prolong the stop. The dashcam starts at 0:08, and Trooper Cejka's cruiser shortly thereafter pulls out to stop Mr. Plourde's vehicle. The audio turns on at 1:05. Trooper Cejka pulls Mr. Plourde over at 1:30 and approaches his car, presumably obtaining his driver's license, car registration, and insurance information. As Trooper Cejka turns to return to his cruiser, Trooper Verhille comes into the dashcam video at about 2:40. Trooper Verhille speaks briefly with Mr. Plourde, and at 3:40 the canine appears. At 5:14, Trooper Cejka reappears from his cruiser, and at 5:40, Mr. Plourde steps out of his vehicle upon request.[71] The canine begins an interior search at 5:54, and at 7:40, the troopers direct Mr. Plourde to move back from the vehicle. Mr. Plourde returns to his car at 14:30, the interior search having been completed, and by 14:53, Mr. Plourde sits back into the driver's seat. At 15:30, the cruiser backs up a bit, and at 16:24, Mr. Plourde reenters a travel lane on I-95.

In *Rodriguez v. United States*, 575 U.S. 348 (2015), the Supreme Court wrote that the "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* at 354 (internal citation omitted). The *Rodriguez* Court addressed a situation where the first officer told the driver to stay for a canine sniff after issuing a written warning to the driver for driving on the shoulder of the road and returning the driver's license, motor vehicle registration,

---

[71]     Mr. Plourde also claims that Trooper Cejka twice asked him whether there was marijuana in the vehicle, to which Mr. Plourde responded in the negative both times. PSAMF ¶ 5; DRPSAMF ¶ 5. Given that just over four minutes elapsed between Mr. Plourde's car stopping and Mr. Plourde exiting his vehicle, the record does not allow the conclusion that these questions prolonged the stop.

and insurance card. *Id.* at 352. The officer told the driver that he was not free to leave, and the canine alerted to something in the vehicle "seven or eight minutes" after the officer had issued the written warning. *Id.* The Supreme Court vacated the Eighth Circuit's judgment, which had approved the stop, and remanded the case to determine whether reasonable suspicion of criminal activity justified detaining the driver. *Id.* at 358.

Here, Trooper Verhille appears in the video just as Trooper Cejka is walking back to his cruiser to run the information he received from Mr. Plourde. In *Rodriguez*, the Supreme Court observed that "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (second alteration in original) (quoting *Caballes*, 543 U.S. at 408). The Supreme Court explained that "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Officers may also "inquire into the driver's itinerary." *United States v. Dion*, 859 F.3d 114, 125 (1st Cir. 2017) (citing *United States v. Fernandez*, 600 F.3d 56, 60-62 (1st Cir. 2010); and *Chhien*, 266 F.3d at 9); *see also United States v. Dexter*, 602 F. Supp. 3d 244, 252 (D.N.H. 2022) ("A limited number of questions about travel plans . . . fall into this category of ordinary inquiries related to highway safety").

Based on the contents of the dashcam, there is no genuine dispute that the canine search began while Trooper Cejka was in his cruiser running the information from Mr. Plourde. The canine appeared at 3:40 and began his sniff shortly thereafter.

Trooper Cejka, who came from the Plourde vehicle with some documents in hand, does not reappear in the video until 5:14, presumably having completed his background check. Although the exact time when the canine alerted to something inside the vehicle is not evident from the dashcam, the Troopers directed Mr. Plourde to step out of the vehicle at 5:40, by which time it is logical to infer that the canine had alerted to something inside the car, an inference confirmed by the fact that by 5:54, the canine entered the car and the Troopers and the canine had begun an interior search. Assuming the lapse of time between when Trooper Cejka reemerged and when the canine alerted is the correct way to evaluate the delay, the dashcam video confirms that if there was any delay at all, it was a matter of seconds.

In similar situations, courts have concluded that this type of delay is insufficient to constitute a Fourth Amendment violation. *See United States v. Chaney*, 584 F.3d 20, 26 (1st Cir. 2009) ("Here, the officer's initial inquiries into [the passenger's] identity took at most a minute or two and did not measurably extend the duration of the stop"); *see also United States v. Clark*, 879 F.3d 1, 5 (1st Cir. 2018) ("McGoon's one-minute of follow-up questioning did not unlawfully prolong the traffic stop"); *United States v. Ramdihall*, 859 F.3d 80, 88 (1st Cir. 2017) (holding that an 82-minute stop was reasonable under the circumstances). In *United States v. Henderson*, 463 F.3d 27, 46-47 (1st Cir. 2006), the First Circuit, in a pre-*Rodriguez* decision, concluded that a ten-to-fifteen-minute prolongation of a traffic stop unconstitutionally prolonged the stop. Here, the entire traffic stop from the point where Trooper Cejka stopped Mr. Plourde's vehicle to the point when Mr. Plourde

pulled back out into traffic took about fifteen minutes, so the permissible part of the stop falls well within the First Circuit's parameters for a constitutional stop.[72]

### D.   The Vehicle Search Met Constitutional Standards Once the Canine Alerted to the Interior of the Vehicle

As noted earlier, the canine alerted to something in the Plourde vehicle around 5:40 into the stop, when the Troopers directed Mr. Plourde to step out of his vehicle. Once the canine alerted, the Troopers had probable cause to search the interior of Mr. Plourde's vehicle.  *United States v. Brown*, 500 F.3d 48, 57 (1st Cir. 2007) ("[A] reliable canine sniff outside a vehicle can provide probable cause to search the vehicle"); *United States v. Lopez*, 380 F.3d 538, 544 (1st Cir. 2004); *see also United States v. Owens*, No. 2:20-cr-00041-JDL, 2021 U.S. Dist. LEXIS 130244, at 32 n.12 (D. Me. July 13, 2021) ("[O]nce the dog alerted, Sergeant Pappas had probable cause to search the car and any persons that were inside it"); *Williams*, 2020 U.S. Dist. LEXIS 91549, at *16 ("At that point, the dog alerted to the odor of narcotics on the vehicle, providing probable cause to search it"); *United States v. Turner*, No. 2:18-cr-00176-JDL, 2019 U.S. Dist. LEXIS 111162, at *12 (D. Me. July 3, 2019) ("A positive alert by a trained drug detection dog can provide probable cause to conduct a warrantless search of a vehicle"); *Martin*, 2019 U.S. Dist. LEXIS 94863, at *16 ("The positive alert therefore provided probable cause for the warrantless search of the vehicle").

---

[72]     Another way of looking at this scenario is that by the time the canine alerted, the "seizure's 'mission'" had not been completed because Trooper Cejka had not issued Mr. Plourde a written or verbal warning by that time, so there was no delay at all.

Further, Mr. Plourde's contention that "there was no reason to continue searching the Plaintiff's vehicle" after the Troopers had located the piece of pizza is unavailing. *Pl.'s Opp'n* at 10. Mr. Plourde's argument is based on his assumption Trooper Verhille's canine alerted to the piece of pizza, and that the Troopers recognized this when they discovered the pizza. *See id.* ("Defendant Verhille is seen to continue searching the plaintiff's vehicle for a period of time not less than one minute and thirty seconds *after* the impetus for the search had been located and brought to the attention of plaintiff by Defendant Cejka" (emphasis in original)). But Mr. Plourde's own statement of material fact reads, "Mr. Plourde was told by Trooper Cejka that the canine had *probably* mistaken the piece of pizza as narcotics." PSAMF ¶ 25; DRPSAMF ¶ 25 (emphasis supplied). There is no indication that either Trooper Cejka or Trooper Verhille ever concluded that the piece of pizza actually was the impetus for the canine's alert. Since the canine's alert provided probable cause to search Mr. Plourde's vehicle for drugs, the Troopers were entitled to continue their search until they either found drugs or were satisfied that no drugs were present. *See United States v. Giuffrida*, No. 1:11-cr-00095-JAW, 2012 U.S. Dist. LEXIS 6843, at *21 (D. Me. Jan. 19, 2012) ("Ultimately, Officer Hammond could not know what [the canine] was alerting to, but . . . he reasonably concluded that there was probable cause to enter the vehicle and search for contraband").

Finally, the Troopers did not violate the Fourth Amendment when they asked Mr. Plourde about his hobbies and his employment. Mr. Plourde claims that the Troopers' questions unnecessarily prolonged the stop "beyond the time required to

complete the mission." *Def.'s Opp'n* at 10.  But Mr. Plourde's version of events is simply not supported by the video.  In the video, Trooper Cejka begins speaking with Mr. Plourde about the piece of pizza at 10:35.  During this period, Trooper Verhille can be seen completing the interior search of Mr. Plourde's car.  The conversation about the pizza finishes at about 12:15, at which point Trooper Cejka briefly returns to his cruiser.  Roughly one minute later, at 13:18, Trooper Cejka can be seen exiting his cruiser.  Trooper Cejka then returns to Mr. Plourde, the pizza is brought up again, and the stop concludes.  Trooper Cejka returns to his cruiser for the final time at 14:18.

Based on the video, the Troopers spoke with Mr. Plourde for slightly less than four minutes.  During this time, one Trooper was generally pursuing the mission of the traffic stop.  The lone exception appears when both Troopers were speaking to Mr. Plourde at the end of the stop, but this conversation was brief—roughly one minute—and focused on the stop itself.  As such, the Court rejects Mr. Plourde's contention that the Troopers prolonged the traffic stop when they spoke to him.

### E.    Summary

In sum, the Court concludes that Mr. Plourde's claim against Troopers Cejka and Verhille must fail because: "a hypothetical reasonable officer" who observed that his cruiser's speed monitoring equipment had alerted him to a vehicle exceeding the posted speed would "reasonably suspect" that Mr. Plourde was violating Maine traffic laws and would have the legal authority to stop the vehicle; because the dog sniff of the exterior of Mr. Plourde's vehicle does not constitute a search under the Fourth

Amendment and because the canine search to the point of the alert did not prolong the traffic stop beyond the time necessary to handle the traffic violation that justified the stop; and because once the canine alerted, the Troopers had probable cause to search Mr. Plourde's vehicle.

The Court agrees with Mr. Plourde that there are some unusual aspects of this traffic stop. First, Trooper Cejka's standard for pulling over speeders on I-95 is whenever they are exceeding the speed limit by only five miles per hour. This runs against conventional wisdom that Maine State Troopers are a bit more lenient, perhaps by as much as eight miles per hour. But there is nothing in the law that invalidates a traffic stop for exceeding the speed limit by five miles an hour because, as noted above, 29-A M.R.S. § 2074(3-A) does not contain the cushion of leniency that many drivers think (or wish) exists.

Second, Trooper Verhille made an unusually quick appearance on the scene with his trained canine, less than three minutes into the stop. There is no explanation as to why Trooper Verhille was there so quickly. But the law protects Mr. Plourde for unreasonable delay, not surprising quickness.

Third, Trooper Verhille's canine alerted to something inside the Plourde vehicle and when the Troopers searched the vehicle, they found no drugs and only an old piece of pizza. At the end of the stop, the Troopers suggested to Mr. Plourde that the canine may have alerted to the pizza and asked him if they could retain it for canine training. Mr. Plourde readily allowed the Troopers to take the old piece of pizza. This is unusual, but it does not negate the principle that law enforcement

gains probable cause for a vehicle search based on a trained canine alert. Probable cause does not depend on what was ultimately found (or not), but on what law enforcement knew before the interior search was undertaken and the law is clear that a canine alert is sufficient probable cause for a vehicle search.

Still, the Court acknowledges that these circumstances, taken as a whole, particularly the dog alert on the pizza, are a bit unusual. But unusual does not necessarily mean unconstitutional, and the circumstances, though somewhat out of the ordinary, do not undercut the Court's application of the law to the undisputed facts and its conclusion that the Troopers are entitled to summary judgment.

### F.   The Troopers Are Entitled to Qualified Immunity

The Defendants also assert that Mr. Plourde's civil lawsuit is barred because they are entitled to qualified immunity, as their "actions were all consistent with Defendants' reasonable reliance on existing law." *Defs.' Mot.* at 10-18. The Court agrees with the Defendants that qualified immunity poses an insurmountable hurdle for Mr. Plourde and that Mr. Plourde's lawsuit fails for this reason as well. However, the Court declines to engage in a qualified immunity analysis because it would only buttress a conclusion the Court already arrived at, namely that Mr. Plourde's lawsuit must fail because even viewing disputed matters in the light most favorable to Mr. Plourde, he has not stated a cognizable claim against either Trooper Cejka or Trooper Verhille.

## VI.    CONCLUSION

The Court GRANTS the Defendants' Motion for Summary Judgment (ECF No. 151) and ORDERS that the Clerk enter judgment against Glen Plourde and in favor of Defendants Robert Cejka and Eric Verhille.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of February, 2024